STATE, Respondent, v. BOYCE, Appellant.

*No. 75–883–CR.  Argued January 6, 1977.—*
*Decided February 1, 1977.*
(Also reported in 249 N. W. 2d 758.)

For the appellant there was a brief by *D. Michael Guerin,* attorney, and *Gimbel, Gimbel & Reilly,* of counsel, and oral argument by *Mr. Guerin,* all of Milwaukee.

For the respondent the cause was argued by *Pamela Magee,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J.   Two issues are presented:

(1)  Did the trial court abuse its discretion in refusing to grant a new trial because of newly discovered evidence?

(2)  Did the trial court abuse its discretion in refusing to grant a new trial in the interest of justice?

Robert M. Kools lost his wallet in George's Steak House in Appleton, Wisconsin on July 10, 1974. The wallet contained a number of credit cards, including a Master Charge card. Two days later, on July 12, 1974, an Oldsmobile Cutlass was rented by Avis Rent-A-Car Agency to a man who presented the driver's license of Robert Kools as identification and charged the rental on Kools' Master Charge card. The charge slip was signed "R. Kools." The rental took place at General Mitchell Field in Milwaukee and was for the period of July 12–14, 1974. The automobile was never returned. At the preliminary examination and the trial, the Avis employee who prepared the rental contract positively identified defendant Gary S. Boyce as the man who rented the car and signed the rental agreement and the Master Charge form.

On July 25, 1974, the same Master Charge card belonging to Mr. Kools was used to charge a dinner for two in Bettendorf, Iowa. The waitress who served the men testified unequivocally that it was Gary S. Boyce who signed the Master Charge sales draft.

Both the waitress and Avis employee made a pretrial photo identification of Boyce. In each case several other photos were presented along with that of Boyce. Each of them, independent of the other, identified Boyce.

Boyce was arrested and appeared in court with retained counsel on August 26, 1974.

The defendant presented four alibi witnesses. The first, John J. Stock, testified that he and Boyce were together in the Eastbrook Restaurant in Milwaukee

on July 12, 1974 from approximately 4 to 5:30 p.m. They arrived at the restaurant together in Stock's car. Stock left to go to work, but called Boyce at the bar between 8 and 8:15 p.m., to determine whether he and Boyce were going to keep an appointment with another man later that evening. Stock returned to the Eastbrook around 9:10 p.m.; he met Boyce and Julie Donahue. The Avis car was rented at 8 p.m.

Donahue testified she arrived at the Eastbrook Restaurant around 6:30 p.m., on July 12, 1974, and was with Boyce between her arrival and 9 or 9:30. She stated the longest time he was out of the room was "a few minutes."

William Gillan and William Kasik testified they were in the Eastbrook Restaurant on the evening of July 12th. Both of them spoke to Boyce. Gillan left between 7 and 7:30 p.m., and did not see Boyce leave. Kasik left by 7 p.m., and did not see Boyce at that time.

Boyce was an unsalaried, commissioned salesperson working for Gillan's company, Beverage Control Systems. On cross examination Gillan stated that his firm had a business meeting in Appleton in July of 1974. On July 10, 1974, the Gillan company did have a business meeting in George's Steak House. Gillan testified Boyce was not at that meeting. Robert Scopoline, a Milwaukee County Sheriff's Department detective, testified that in investigating this crime he interviewed William Gillan. Prior to trial, Gillan called Scopoline and in discussing the business meeting in Appleton he stated that it was possible that Boyce could have been at the meeting.

On May 20, 1975, the day of trial, the defense sought a two week continuance based on the statements of Donald Doud, a questioned document examiner, that if he could examine the original Master Charge sales draft and handwriting of Boyce he could make a comparative analysis. The prosecution objected to this motion be-

cause the handwriting expert of the Wisconsin State Crime Laboratory stated there were not enough letters in the signature to make a valid determination. The court denied the motion for continuance, but stated that Doud could be called as a witness and if it was then shown that a one day continuance was necessary it would be granted. The defense did not call Doud. On May 21, 1975, the jury found the defendant guilty.

Subsequent to trial, at a hearing on postconviction motions, Donald Doud testified that the handwriting of Gary Boyce could not be "connected up with the 'R. Kools' signature." Some two months later he stated it was his "opinion that the signature on [the Master Charge sales draft from Avis] was not executed by the defendant [Boyce]."

From the initiation of criminal proceedings through this appeal, Boyce has been represented by four different lawyers. He initially retained James Dwyer. Dwyer contacted Doud in January of 1975 and provided him with a copy of the Avis Master Charge sales draft. Doud does not render opinions from copies; accordingly the attorney demanded the original be produced. In early February, 1975, Dwyer made a motion for discovery which included the original Master Charge sales draft. This motion was not heard before Dwyer was permitted by the court to withdraw as Boyce's attorney because of nonpayment of fees.

The clerk's docket in this case indicates that Attorney D. Michael Guerin, present appellate counsel, then made a number of court appearances for Boyce on the matter of bail. These appearances were in mid-March, 1975. However, a transcript from proceedings held on March 17, 1975, concerning the indigency of Boyce indicates that on that date he appeared without counsel. The docket indicates Guerin appeared for him on that date. There was some question as to the indigency of Boyce

because of a sale of an expensive car to a relative for One Dollar. On March 24th Guerin withdrew and the court appointed the Milwaukee County Public Defender to represent Boyce. Boyce was represented by Public Defender Patricia Heim from that time until August of 1975. In postconviction proceedings Boyce was represented by Loyal Hansen of the Public Defender's office. Boyce is now again represented by Attorney Guerin.

Further facts will be set forth below.

The initial argument of defendant Boyce is that this court should grant a new trial on the basis of newly discovered evidence. A motion for a new trial upon the ground of newly discovered evidence is addressed to the second discretion of the trial court.[2] We reverse only for an abuse of discretion. The requirements for granting a new trial for newly discovered evidence are:

" '. . . (1) The evidence must have come to the moving party's knowledge after a trial; (2) the moving party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to the testimony which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial.' " *Sheehan v. State,* 65 Wis.2d 757, 768, 223 N.W.2d 600, 606 (1974) ; *State v. Herfel,* 49 Wis.2d 513, 521–22, 182 N.W.2d 232, 237 (1971).

If the newly discovered evidence fails to meet any one of these tests, the moving party is not entitled to a new trial. *Sheehan, supra* at 768, 223 N.W.2d at 606.

The claimed newly discovered evidence is the testimony of Doud to the effect that Boyce did not sign the Avis Master Charge sales draft. The trial judge, in con-

---

[2] *Swonger v. State,* 54 Wis.2d 468, 471, 195 N.W.2d 598, 600 (1972).

sidering the motion for a new trial, considered the standards set forth above. He concluded that the evidence came to Boyce's knowledge after trial. In *Sheehan, supra,* Sheehan argued that testimony of a codefendant, given after Sheehan's trial, was newly discovered evidence. This argument was rejected. Sheehan did not know the exact testimony codefendant would give. That did not make the evidence new. The codefendant was available to testify and Sheehan was aware of this. Here, while Boyce could not know the exact nature of Doud's testimony until he testified, and, in that sense the testimony after trial was new evidence, it was not new in the sense that Doud might give favorable testimony at the time of trial. The defense knew, at the time of trial, that if Donald Doud had the original Master Charge sales draft he would attempt an analysis and could testify whether, in his opinion, the signature on the sales draft was that of Boyce. The fact that Doud would make an examination and would testify was known to the defendant before the trial.

The trial court concluded that the defendant was negligent in not obtaining the original document so Doud could examine it prior to trial. At the preliminary hearing on September 4, 1974, the county judge stated he could receive testimony from a handwriting expert on whether the signature on the sales draft was that of Boyce, but thought this was a jury question. In January of 1975, after examining copies of the Master Charge sales draft provided by Attorney Dwyer, Doud asked for the original. An untimely discovery motion was filed by Dwyer but even this motion was not pursued.[3] At a pretrial conference held on April 25, 1975, Public Defender Heim stated she believed all pretrial motions had been disposed of.

[3] As to the untimeliness of the motion, *see* sec. 971.23(5), Stats., concerning motions for production of physical evidence for scientific analysis with sec. 971.31(5)(a) concerning time limits for making motions.

Based on the facts it had when the motion for new trial was denied, the trial court's conclusion of negligence was appropriate. Initially, there was negligence in not bringing the discovery motion within the time period for bringing pretrial motions. However, Attorney Dwyer made a subsequent motion for discovery, and sec. 971.31(5), Stats., grants the trial judge the discretionary authority to enlarge the statutory period for bringing motions. Dwyer withdrew from the case before the motion was heard. No other counsel pursued this motion, but Public Defender Heim did make a demand for discovery which included a demand for all exculpatory evidence. This demand did not include a specific demand for the original Master Charge sales draft.

Subsequent to the trial judge's memorandum decision on the postconviction motions, affidavits were filed by Public Defender Heim and Daniel Cullen, an investigator for the Legal Aid Society of Milwaukee. These affidavits stated in pretrial negotiations Negatu Molla, prosecuting attorney, informed Heim that a Mr. Kelly of the State Crime Lab attempted a handwriting analysis but his findings were inconclusive. According to the affidavits, Heim requested the release of the original sales draft to have it analyzed by Doud. Molla refused this request but promised that he would resubmit the original Avis sales draft to the Crime Lab for a second analysis. A short time after the conference he said the sales draft and a sample of Boyce's handwriting would be submitted for analysis to a Mr. Belinski, document examiner for the Milwaukee Police Department. Because of these promises, Heim claims, she did not retain Doud to examine the sales draft. On the day before trial she learned that Molla had not followed through on his promise. If these affidavits are correct,[4] they mitigate Heim's failure to renew the discovery motion filed by

[4] The veracity of these affidavits was at all times vigorously contested by Mr. Molla.

Dwyer. However, they do not explain the failure to call Doud as a witness at the trial when almost invited by the trial judge to do so. If he had testified and explained why he needed more time to prepare an analysis and how long it would have taken, the trial court would have granted a continuance. The trial court did not abuse its discretion in following this procedure in denying a two week continuance on the day of trial with the jury in attendance.

The trial judge did not only rely on the negligence of the defendant in denying the motion for a new trial, but also on his belief that it was not reasonably probable that a different result would be reached on a new trial. He noted that the Avis employee who rented the car positively identified Boyce as the person who signed his name "R. Kools" to the rental agreement. Also, a waitress at an Iowa restaurant observed Boyce display the Master Charge credit card of Robert Kools.

Boyce did produce witnesses who presented a plausible alibi. But William Gillan testified that on the day Robert Kools lost his wallet and credit cards his firm was conducting a business meeting in the Appleton restaurant where they were lost. Gillan told a Milwaukee county sheriff's deputy it was possible Boyce was present at the meeting.

In weighing whether a new trial should be granted, the trial judge wrote:

"If a new trial were granted, it is problematic at best that the jury would accord more weight to the testimony of Mr. Doud and the alibi witnesses than to the women whose unequivocal testimony identified the defendant as the person both who signed the contract in the presence of witness Aleksy and who had the Master Charge credit card of Mr. Kools in the presence of Marjorie Goat."

Thus, applying the fifth requirement set forth in *Sheehan, supra,* and *Herfel, supra,* the trial court concluded that it was not probable that a different result

would be reached on a new trial. The trial judge had the opportunity to view all the witnesses and the probable effect they had on the jury. After listening to the testimony of Mr. Doud, it concluded it would not produce a different result. Considering the strength of the testimony against Boyce, it is difficult to disagree with the trial judge's conclusion. He did not abuse his discretion in denying the motion for a new trial.

The defendant contends that because it was error to deny the motion for continuance in order to produce Doud and his testimony, the trial court should have granted a new trial in the interest of justice. It is not a question of trial court error but rather abuse of discretion. The trial judge prior to trial questioned whether all pretrial motions were disposed of and was informed they were. Counsel for Boyce now claims that trial counsel was misled by unfulfilled promises of the district attorney's office. Had these statements been made at the time the continuance was sought they might have influenced the court's decision. But the claim that the defense was prejudiced by actions of the district attorney was not presented until *after* the trial judge rendered his decision denying a new trial and made a finding that defense counsel was negligent in not pursuing the handwriting analysis. In making the motion for continuance, defendant counsel did not make it clear that she had been misled by the assistant district attorney. *Elam v. State,* 50 Wis.2d 383, 390, 184 N.W.2d 176, 180 (1971), sets forth criteria for determining whether a continuance should be granted. One of these is whether the defendant was guilty of any negligence in procuring the witness' attendance. It appeared that trial counsel had been negligent in not procuring Doud's attendance. The trial court did not abuse its discretion in not granting a continuance. The trial judge noted that if the witness was brought into court he would consider granting a continuance.

Trial counsel entered into a stipulation that stated if a Mr. Kelly from the State Crime Lab were to testify he would testify that he compared the signature on the rental agreement with a handwriting sample of Boyce and could not make a determination whether the signature on the rental agreement was that of Boyce. He would testify that the reason he could not make a determination was there were too few letters in the "R. Kools" signature on the rental agreement to make a professional determination. It was a trial tactic to use this stipulation. It was possible that a jury might have been swayed by the state's inability to link the writing of Boyce with that on the rental agreement. After this did not succeed and Boyce was convicted, the defense finally turned to Doud.

Although it was not an abuse of discretion to deny the continuance, this court may grant a new trial in the interest of justice on its own motion. In *Garcia v. State,* 73 Wis.2d 651, 245 N.W.2d 654 (1976), a new trial in the interest of justice was granted, although the crucial evidence was not newly discovered. There this court noted:

"A rule often stated is that 'a new trial in the interest of justice will be granted only if there has been an apparent miscarriage of justice and it appears that a retrial under optimum circumstances will produce a different result.'" *Id.* at 654, 245 N.W.2d at 655–56.

Reviewing the evidence in the record before us, we must agree with the trial court that even with the testimony of Doud it is not probable a retrial would produce a different result. The witnesses who identified Boyce made unequivocal identifications and gave credible reasons why they had no difficulty in remembering him. A jury had the opportunity to hear these witnesses and the alibi witnesses and believed those who identified Boyce. While it is possible that a different result might occur if

there were a second trial, that is not the test. It must appear, with a substantial degree of probability, that a different result will be produced.

In *Garcia, supra,* when posttrial motions were brought by the defendant, the trial court refused to hear testimony of a witness who participated in committing the crime. The witness had signed affidavits stating he was involved in the crime and the defendant was not involved. This court noted:

"We would like, additionally, to comment that had the trial court heard the testimony of Rios at the hearing on the motion for a new trial and concluded his testimony was incredible and not subject to belief, we, in all probability, would have accepted that evaluation and would not have granted a new trial." *Id.* at 656, 245 N.W.2d at 656.

In this case the trial judge did hear the testimony of Donald Doud. Prior to denying the motion he received written briefs and filed a written decision. While he did not find Doud's testimony incredible, he found that it would not change the result. He viewed the testimony of all the witnesses and was in a better position than this court to determine whether the result would change. Even without having the opportunity to view the witnesses as they testified, considering the record as a whole, it does not appear to this court that Doud's testimony would change the result.

The motion for new trial on the basis of newly discovered evidence was properly denied because it is not probable that the testimony of the questioned document examiner would produce a different result. The court need not reach the issue of whether the alleged statements of the district attorney that he would resubmit the rental agreement for handwriting analysis justified trial counsel's failure to timely renew discovery motions. If any of the requirements for newly discovered evidence

are not met a new trial will not be granted. Therefore, even if the defense was not negligent, a new trial was properly not granted because it does not appear probable that the new evidence would produce a different result.

It was not an abuse of discretion to deny the motion for continuance. The motion was not brought until the day of trial. At the time the motion was brought there was no showing that the defense was diligent in attempting to obtain the original rental agreement for examination by Donald Doud or that it had been misled by the statements of the prosecutor. When the continuance motion was made, defense counsel stated she sought reexamination of the sales draft a week before the trial. The public defender was appointed to represent Boyce eight weeks before trial. It was not entitled to wait until the week before trial to obtain the original and when it did not succeed claim that the prosecutor caused the failure. Again, the significant factor is that if this evidence was received it does not appear that the result would change.

The defendant has not demonstrated an abuse of discretion on the part of the trial court in denying either the trial or postconviction motion. We conclude from the record before us that this court should not grant a new trial in the interest of justice based upon sec. 251.09, Stats.

*By the Court.*—Judgment and order affirmed.