STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Ronald W. MCCALLUM, Defendant-Appellant.

Supreme Court

*No. 95–1518–CR. Oral argument December 4, 1996.—Decided April 18, 1997.*

(Also reported in 561 N.W.2d 707.)

466

For the plaintiff-respondent-petitioner there were briefs by *Sharon Ruhly*, assistant attorney general, and *James E. Doyle*, attorney general and oral argument by *Sally L. Wellman, assistant attorney general*.

For the defendant-appellant there was a brief by *Steven L. Miller* and *Miller & Miller*, Green Bay and oral argument by *Steven L. Miller*.

¶ 1. WILLIAM A. BABLITCH, J. Ronald V. Mc Callum (McCallum) was convicted of second degree sexual assault of H.L., a minor, under Wis. Stat. § 948.02(2). The prosecution was based solely on H.L.'s uncorroborated testimony. One year after McCallum was convicted, H.L. recanted her accusation. Relying on H.L.'s recantation, McCallum filed a post-conviction motion to withdraw his Alford plea. Concluding that H.L.'s recantation was "less credible" than her original accusation, the Circuit Court for Brown County, Judge Peter J. Naze, presiding, denied McCallum's motion. The court of appeals held that the circuit court had applied the wrong legal standard in determining whether there was a reasonable probability of a different outcome, and reversed and remanded for a new trial.[1] We agree. The standard is whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt. However, we reverse that part of the court of appeals' decision granting a new trial. We remand to the circuit court to apply

---

[1] In the case of a conviction subsequent to an Alford plea, the "different outcome" to which we refer is the different outcome of a trial, not a "new" trial inasmuch as there has never been a trial.

the proper legal standard to determine whether Mc Callum should be allowed to withdraw his plea.

¶ 2. The facts pertinent to this appeal are as follows: In February 1993, McCallum, his girlfriend, Sandra L., and Sandra's daughter, H.L., lived together. Although Sandra was still married to H.L.'s father, they were in the process of divorcing. During this time, H.L. accused McCallum of sexual contact. She reported her accusation to the Green Bay police department. Mc Callum was charged with one count of second degree sexual assault. A preliminary hearing was held at which H.L. was the sole witness against McCallum. She repeated her accusations against him. On May 19, 1993, maintaining his innocence, McCallum entered an Alford plea and was convicted of second degree sexual assault.

¶ 3. In May 1994, H.L. recanted. After speaking with her mother, H.L. wrote a letter, which was given to McCallum's attorney, stating that she had made up the story of McCallum grabbing her breast so she could get him out of her mother's life. She hoped her parents would reconcile. In the letter, H.L. explained that she set up a situation "so [McCallum] didn't have a witness to back up his story." Her letter concluded:

> He was arrested on Feb 26, 1993 & was sent to jail that weekend. He was released and had to move out because of the case. He was sentenced to 6 months in the County Jail for a crime he didn't commit [sic]. I realize that what I said was not the truth and I'm sorry that I said what I said. I want him to be free of all this because I feel that I commited [sic] an error so long ago that wasn't right. I just hope Ron McCallum, the corts [sic] and everybody else will forgive me.

¶ 4. Based on H.L.'s recantation of her original statement, McCallum filed a post-sentencing motion to withdraw his *Alford* plea. Sandra and H.L. testified at the post-conviction hearing. During the hearing, Judge Naze explained to H.L. that she had "a right to not answer any question that might tend to incriminate her" and a right to talk to an attorney. He also explained that if she were to testify that she had lied under oath, she would be committing a criminal or delinquent juvenile offense. Consequently, the hearing was interrupted and resumed after the court appointed an attorney for H.L.

¶ 5. The facts elicited from H.L. and Sandra's testimony at the post-conviction hearing follow: Mc Callum was Sandra's boyfriend with whom she had a six-year relationship. When she heard of H.L.'s allegation, Sandra was skeptical but did not accuse H.L. of lying. Sandra maintained her relationship with McCallum throughout the case despite H.L.'s original allegation and despite the no contact order. She would have liked to have continued living with McCallum. Nonetheless, Sandra never explained to H.L. that if H.L. would admit that she lied, McCallum could live with them again. When asked whether H.L. knew of the no contact order, Sandra answered that she had never mentioned it to H.L.

¶ 6. In early 1993, Sandra was in the process of obtaining a divorce. During that period, H.L. was skipping school, coming home late, and not obeying house rules. Because Sandra worked nights, and McCallum worked the day shift, he was responsible for enforcing the rules and disciplining H.L.

¶ 7. H.L. testified that during this time, she was upset, hurt, and angry because her mother and father were going through a divorce. She blamed McCallum

for the divorce and felt that he was trying to take the place of her father. She resented the fact that he was disciplining her. At the time H.L. accused him of sexual contact, McCallum had "grounded" her for almost three months. She first related her accusation to her sister, Joy, because she believed Joy would report the assault to Social Services.

¶ 8. In May 1994, H.L. told her mother that she had lied to the police and to the circuit court about what happened with McCallum, and she wanted to resolve it. H.L. asked her mother what she could do. Her mother replied that she could talk to McCallum's attorney or write a letter. On May 3, 1994, H.L. handed her mother a letter stating that she had lied. Sandra testified that she neither participated in the letter writing, nor knew H.L. was writing it. At H.L.'s suggestion, the letter was witnessed by Sandra and H.L.'s grandmother.

¶ 9. H.L. testified that everything in the letter was true and that no one told her what to say or assisted her in any way. She insisted that she had falsely accused McCallum of sexual contact; no one influenced her to recant; and she understood that she was admitting to perjury. She confessed her lie to her mother and wrote the letter because she felt that Mc Callum "shouldn't have a criminal record because I lied about the stuff—about him supposedly sexually assaulting me."

¶ 10. H.L. further testified that, at the time of her accusation, she hoped to get McCallum out of the home so that her mother and father would have a chance to get back together. She believed the accusation would accomplish this because her friend's brother had to move out of the house when he sexually

471

assaulted his sister. She made the specific allegation "because there were no witnesses and. . .no evidence."

¶ 11. Under cross-examination, H.L. agreed that things were "better" when McCallum was living in the home, and she was aware that in order for him to return to the home, she would have to return to court and recant her accusation.

¶ 12. After the hearing, the circuit court denied McCallum's motion to withdraw his Alford plea. It found H.L.'s recantation to be uncorroborated and less credible than her accusations. After finding "the victim's uncorroborated recantation to be less credible" than the accusations she made to her sister, to the police, and to the circuit court at the preliminary hearing, the circuit court concluded that there was no reasonable probability that a different result would occur at trial.

¶ 13. The court of appeals reversed, ordering a new trial and stating that if a reasonable jury could believe the recantation, that determination would be sufficient to meet the requirement of a reasonable probability of a different result at trial. We agree that the circuit court applied the wrong standard of law. We remand to the circuit court to apply the correct standard. In addition, the court of appeals held that corroboration is required, and McCallum has met the corroboration requirement. We agree.

¶ 14. This case presents three issues: (1) Whether the circuit court applied an erroneous legal standard when determining that there was not a reasonable probability of a different outcome. (2) Whether the recantation of an uncorroborated allegation must be supported by newly discovered evidence corroborating evidence of the recantation, and, if so, whether that requirement was met. (3) Whether the appropriate

remedy, in this case, is remand directing a grant of the motion to withdraw the plea, or for redetermination by the circuit court, applying the correct legal standard, of McCallum's request to withdraw his plea.

¶ 15. After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice. *State v. Krieger*, 163 Wis. 2d 241, 249, 471 N.W.2d 599 (1991). The withdrawal of a plea under the manifest injustice standard rests in the circuit court's discretion. *Id.* at 250. We will only reverse if the circuit court has failed to properly exercise its discretion. *Id.* An exercise of discretion based on an erroneous application of the law is an erroneous exercise of discretion. *State v. Martinez*, 150 Wis. 2d 62, 71, 440 N.W.2d 783, 787 (1989).

¶ 16. Newly discovered evidence may be sufficient to establish that a manifest injustice has occurred. *Krieger*, 163 Wis. 2d at 255. For newly discovered evidence to constitute a manifest injustice and warrant the withdrawal of a plea the following criteria must be met. First, the defendant must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. If the defendant proves these four criteria by clear and convincing evidence, the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial. Finally, when the newly discovered evidence is a witness's recantation, we have stated that

the recantation must be corroborated by other newly discovered evidence. *Zillmer v. State*, 39 Wis. 2d 607, 616, 159 N.W.2d 669 (1968).

## I.

¶ 17. The first issue we address is whether the circuit court applied an erroneous legal standard when concluding that there was not a reasonable probability of a different outcome. In determining whether there was a reasonable probability of a different result, the circuit court stated that H.L.'s recantation was less credible than her accusation. Therefore, the court concluded, McCallum could not withdraw his Alford plea because "there is no reasonable probability that a different result would occur at trial."

¶ 18. The problem here rests with the circuit court's determination that H.L.'s recantation was less credible than her accusation. That is not the appropriate standard. The correct legal standard when applying the "reasonable probability of a different outcome" criteria is whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt. This standard is equally applicable to motions to withdraw an Alford plea, motions to withdraw a guilty plea, and motions for a new trial. *State v. Krieger*, 163 Wis. 2d 241, 255, 471 N.W.2d 599 ( Ct. App. 1991).

¶ 19. The circuit court concluded that there was no reasonable probability that a different result would be reached at a new trial because H.L.'s recantation was less credible than her accusation. One does not necessarily follow from the other. A reasonable jury

finding the recantation less credible than the original accusation could, nonetheless, have a reasonable doubt as to a defendant's guilt or innocence. It does not necessarily follow that a finding of "less credible" must lead to a conclusion of "no reasonable probability of a different outcome." Less credible is far from incredible. A finding that the recantation is incredible necessarily leads to the conclusion that the recantation would not lead to a reasonable doubt .in the minds of the jury. However, a finding that a recantation is less credible than the accusation does not necessarily mean that a reasonable jury could not have a reasonable doubt. Therefore, in sum, in determining whether there is a reasonable probability of a different outcome, the circuit court must determine whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt.[2] If so, the circuit court must grant a new trial. Accordingly, we hold that the circuit court employed the wrong legal standard

---

[2] Language that appears in the court of appeals' opinion is somewhat problematic. The court of appeals says at one point: "This requirement [there must be a reasonable probability of a different result] is met in this case if a reasonable jury could accept the recantation as true."

Shortly thereafter, the court of appeals says that the standard is met "if a reasonable jury could believe the recantation."

The question, of course, is not whether the jury could accept the recantation as true, or even whether the jury could believe it. A jury does not necessarily have to accept a recantation as true, nor believe it, in order to have a reasonable doubt. Therefore, as we state above, and as the court of appeals correctly concluded, the question is whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt.

when determining that there was not a reasonable probability of a different outcome. Therefore, we affirm that part of the court of appeals' decision reversing the circuit court.

## II.

¶ 20. Next, we consider the issue of corroboration. The rule is that newly discovered recantation evidence must be corroborated by other newly discovered evidence. *Zillmer*, 39 Wis. 2d at 616; *Rohl v. State*, 64 Wis. 2d 443, 219 N.W.2d 385 (1974). McCallum argues that the corroboration requirement should be abandoned because of the high hurdle it creates for the defendant who must corroborate—with newly discovered evidence—the recantation of an uncorroborated accusation. The State of Wisconsin (State) argues that the corroboration requirement must be maintained, even in the case of uncorroborated accusations, because recantation testimony is inherently unreliable. Although we agree with the State that the corroboration requirement must be maintained, we further conclude that it was met in this case.

¶ 21. There is sound reason to adhere to the requirement. Recantations are inherently unreliable. *Dunlavy v. Dairyland Mut. Ins. Co.*, 21 Wis. 2d 105, 114, 124 N.W.2d 73 (1963). The recanting witness is admitting that he or she has lied under oath. Either the original sworn testimony or the sworn recantation testimony is false. Because of the unreliability of recantations, we reaffirm the rule that recantation testimony must be corroborated by other newly discovered evidence.

¶ 22. Alternatively, McCallum argues that the corroboration requirement was satisfied in this case by

the newly discovered evidence contained in H.L.'s post-sentencing statement regarding her motive for the accusation against McCallum.

¶ 23. We agree with the court of appeals that the difficulty in this kind of case is manifest: How can a defendant corroborate the recantation of an accusation that involves solely the credibility of the complainant, inasmuch as there is no physical evidence and no witness. McCallum must corroborate H.L.'s recantation of her uncorroborated accusation. The court of appeals, recognizing the unique difficulty presented by this case, properly concluded that McCallum met the corroboration requirement:

> [T]he degree and extent of the corroboration required varies from case to case based on its individual circumstances. Here, the sexual assault allegation was made under circumstances where no others witnessed the event. Further, there is no physical evidence that could corroborate the original allegation or the recantation. Under these circumstances, requiring a defendant to redress a false allegation with significant independent corroboration of the falsity would place an impossible burden upon any wrongly accused defendant. We conclude, under the circumstances presented here, the existence of a feasible motive for the false testimony together with circumstantial guarantees of the trustworthiness of the recantation are sufficient to meet the corroboration requirement.

¶ 24. *State v. McCallum*, 198 Wis. 2d 149, 159–60, 542 N.W.2d 184 (1995). We agree. The rule has been, and remains, that recantation testimony must be corroborated by other newly discovered evidence. We hold that the corroboration requirement in a recanta-

tion case is met if: (1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation.

¶ 25. We conclude that McCallum has established a feasible motive for H.L.'s accusation. First, she wanted her divorcing parents to reconcile. Second, she resented McCallum for attempting to take the place of her father. Finally, she was angry at McCallum for disciplining her. The newly discovered requirement is met inasmuch as the motives for H.L.'s initial accusation were unknown until she revealed them when she recanted.

¶ 26. We further conclude that there are sufficient circumstantial guarantees of the trustworthiness of H.L.'s recantation. The recantation is internally consistent, and was given under oath. Furthermore, the recantation is consistent with circumstances existing at the time of H.L.'s initial allegation, as testified to by H.L.'s mother: that she and H.L.'s father were in the process of divorcing, and that McCallum had disciplined H.L. for her misconduct involving school truancy, coming home late, and not observing rules of the house. Finally, H.L. was advised at the time of her recantation that she faced criminal consequences if her initial allegations were false. In sum, McCallum has established newly discovered evidence corroborating H.L.'s recantation, and has also provided sufficient circumstantial guarantees of trustworthiness of the recantation. Here, the newly discovered evidence requirement is met inasmuch as the motives for the initial accusation were unknown to the trier of fact at the time of trial.

## III.

¶ 27. McCallum asks us to apply the proper standard and conclude that H.L.'s recantation raises a reasonable probability of a different outcome, and hence, remand to the circuit court for a new trial - a trial in which both H.L.'s recantation and her accusation are admissible. He argues that where, as here, the circuit court erroneously exercised its discretion by applying the wrong legal standard, a new trial is required. We disagree.

¶ 28. Although we could apply the proper legal standard to the facts of this case and determine whether McCallum should be permitted to withdraw his Alford plea, *Libke v. State*, 60 Wis. 2d 121, 129, 208 N.W.2d 331 (1973), our independent review of the record indicates that the wiser course, under these facts, is to remand this case to the circuit court for a hearing to apply the proper legal standard.

¶ 29. Recantation, by its very nature, calls into question the credibility of the witness or witnesses. During the preliminary hearing, under oath, H.L. accused McCallum of pinching her breasts. During the post-conviction hearing, again under oath, she swore that her original sworn testimony was false. During at least one of these hearings, H.L. lied under oath.

¶ 30. H.L.'s credibility is crucial to the application of the proper legal standard, and the circuit court judge is in a much better position to resolve the question of whether the recantation would raise a reasonable doubt in the minds of a jury that is looking at both the recantation and the original statement.

¶ 31. This court is bound by the cold, appellate record. We have read and reread the testimony of H.L. and her mother. Nonetheless, our consideration is limited to the written word and rarely can credibility be

judged by words alone. More often, credibility, or lack thereof, is revealed by a close examination of the witness's demeanor. The cold record does not reflect the witness's demeanor and all its facets; the circuit court has the advantage of observing them.

¶ 32. Because the circuit court is in a better position to determine whether a reasonable probability exists that a reasonable jury looking at both the recantation and the original accusation would have a reasonable doubt as to McCallum's guilt, we defer this determination to the circuit court. Accordingly, the court of appeals' decision granting a new trial is reversed and the cause remanded to the circuit court to apply the proper legal standard to determine whether McCallum should be allowed to withdraw his plea.[3]

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and cause remanded to the circuit court with directions.

¶ 33. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the mandate but write separately to elaborate on the two major issues I believe are raised in the present case. The first is the standard of review applied by an appellate court to a circuit court's denial of a motion for a new trial based on recantation testimony. The second is the legal standard a circuit court applies to determine whether there is a reasonable probability of a different outcome were the fact finder to hear the evidence presented at the

---

[3] McCallum's motion to strike references to the defendant's presentence investigation report from the State's brief is granted. *See State v. Comstock*, 168 Wis. 2d 915, 923–25, 485 N.W.2d 354 (1992).

initial proceeding and to hear the recantation and other new evidence. I shall address each of these issues in turn, but I begin with a general discussion of recantation testimony in the context of a motion for a new trial based on newly discovered evidence.

## I.

¶ 34. Recantation is not a rare phenomenon in the law. Recantation by a prosecution witness, even the sole prosecution witness, does not automatically entitle a defendant to a new trial. Courts view recantation with great caution because of the possibility of undue influence or coercion.

¶ 35. The policy justifying retrial on the basis of recantation is that only guilty persons should be convicted and only by proof beyond a reasonable doubt. Important countervailing policies militate against retrial: the integrity of the initial fact finding process, the finality of judgments, judicial economy, and prejudice to the state caused by delay. Accordingly, exacting standards are applied when a defendant moves for a new trial.

¶ 36. Recantation testimony has proved troublesome for federal and state courts. A rich literature about recantation evidence exists in court decisions and in legal commentary but it is not discussed in Wisconsin cases. This literature explores the tension between the policy concerns which militate for and against the grant of a new trial on the basis of recanted testimony.[1]

---

[1] *See, e.g., Brown v. State*, 816 P.2d 818 (Wyo. 1991). For collections of cases, see Annot., Tim A. Thomas, *Standard for Granting or Denying New Trial in State Criminal Case on Basis of Recanted Testimony—Modern Cases*, 77 A.L.R.4th 1031 (1990 and supp.); Annot., Wade R. Habeeb, *Recantation by Pros-*

¶ 37. In Wisconsin, recantation evidence is treated as one of several types of newly discovered evidence to be analyzed under the "manifest injustice" test. The manifest injustice test for a new trial has five parts and is derived from a Georgia case, *Berry v. State*, 10 Ga. 511 (Ga. 1851).[2] The five elements are: (1) the

*ecuting Witness in Sex Crime as Ground for New Trial*, 51 A.L.R.3d 907 (1973 and supp.); Annot., Tim A. Thomas, *Recantation of Testimony of Witness as Grounds for New Trial—Federal Criminal Cases*, 94 A.L.R. Fed. 60 (1989 and supp.). *See also* Charles Alan Wright, Federal Practice and Procedure: Criminal 2d §§ 557–557.2 (1982 and supp.); Christopher J. Sinnott, Note, *When Defendant Becomes the Victim: A Child's Recantation as Newly Discovered Evidence*, 41 Clev. St. L. Rev. 569 (1993); Sharon Cobb, Comment, *Gary Dotson as Victim: The Legal Response to Recanting Testimony*, 35 Emory L.J. 969 (1986); Janice J. Repka, Comment, *Rethinking the Standard for New Trial Motions Based upon Recantations as Newly Discovered Evidence*, 134 U. Pa. L. Rev. 1433 (1986); Daniel Wolf, Note, *I Cannot Tell a Lie: The Standard for New Trial in False Testimony Cases*, 83 Mich. L. Rev. 1925 (1985); Minnesota Developments, *Criminal Procedure: Minnesota Adopts the Larrison* Standard for Granting a New Trial Because of Newly Discovered Evidence: *State v. Caldwell*, 67 Minn L. Rev. 1314 (1983); Jill A. Schwendinger, Survey, *Ninth Circuit Adopts Berry Standard for New Trials Based Upon Perjured Testimony*, 11 Golden Gate U. L. Rev. 171 (1981); Richard C. Donnelly, *Unconvicting the Innocent*, 6 Vand. L. Rev. 20 (1952).

[2] In its original form the *Berry* test required:

1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to want of due diligence that it did not come sooner. 3d. That it is so material that it would probably produce a different verdict, if the new trial were granted. 4th. That it is not cumulative only_viz.: speaking to facts, in relation to which there was evidence on the trial. 5th. That the affidavit of the witness himself should be produced, or its absence accounted for. And 6th, a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness.

evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; (4) the evidence is not merely cumulative; and 5) "a reasonable probability exists of a different result in a new trial." *State v. Krieger*, 163 Wis. 2d 241, 255, 471 N.W.2d 599 ( Ct. App. 1991). *See also* Wis. Stat. § 805.15(3) (test for new civil trial on basis of newly discovered evidence) and § 972.11 (rules of practice in civil actions generally applicable in criminal proceedings). Unique to Wisconsin, a sixth element is added when the newly discovered evidence is recantation testimony: corroboration, which is discussed in the majority opinion.

¶ 38. Other jurisdictions apply a special rule, the so-called *Larrison* test derived from *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928), to recantation evidence. The *Larrison* test for recantation evidence is based on the theory that perjured testimony affects the integrity of the judicial process in a way that other newly discovered evidence does not.[3]

---

*Berry v. State*, 10 Ga. 511, 527(Ga. 1851).

[3] Under *Larrison*, a new trial should be granted if (1) the court is reasonably well satisfied that the testimony given by a material witness is false; (2) without this testimony the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial. *United States v. Larrison*, 24 F.2d 82, 87–88 (7th Cir. 1928). The seventh circuit has recently stated that the third prong, surprise, is not a *sine qua non* for the grant of a new trial. *United States v. Leibowitz*, 919 F.2d 482, 484–85 (7th Cir. 1990), *cert. denied*, 499 U.S. 953 (1991).

Much of the distinction between the *Berry* and *Larrison* tests has been blurred by the numerous state and federal restatements of the tests. For a discussion of the two tests, see the cases and articles cited at note 1 above.

¶ 39. In this case there is no serious dispute that the defendant met the first four elements for a circuit court to order a new trial based on newly discovered evidence.[4] The determinative element in this case is the fifth *Berry* element, namely that a defendant's motion for a new trial will be granted only if a reasonable probability exists of a different result in a new trial.

## II.

¶ 40. The first issue is the standard of review of a circuit court's determination on a new trial motion. The majority opinion concludes that a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the circuit court and that an appellate court reviews the circuit court's determination for erroneous exercise of discretion.

¶ 41. Numerous prior Wisconsin cases state this standard of review; precedent is abundant. I find no case, however, that sets forth an analysis of the standard of review. Indeed careful assessment of the cases reveals that although this standard of review is oft

---

One commentator has concluded that the "tests seem equally exacting; the difference is that *Berry* is more demanding regarding the probative value of the recantation while *Larrison* emphasizes the credibility of the witness. Hence, the two tests in actuality may present nearly equivalent hurdles to a defendant requesting a new trial." Sharon Cobb, Comment, *Gary Dotson as Victim: The Legal Response to Recanting Testimony*, 35 Emory L.J. 969, 977–78 (1986).

[4] The State suggests that the complaining witness' motive was known or suspected by the defendant at the time of his conviction and thus could not support a finding of newly discovered corroboration evidence.

repeated, it is not necessarily applied.[5] Courts have sometimes applied a different standard of review to each of the five elements of the newly discovered evidence rule.[6] The standard may also depend on whether the same trial judge heard both the trial evidence and the recantation and other new evidence.[7]

[5] The cases reveal that although the supreme court repeats the erroneous exercise of discretion standard of review, it often appears to have reviewed the trial courts' decisions independently, determining anew whether there exists a reasonable probability of a different result. *See, e.g., State v. Sarinske*, 91 Wis. 2d 14, 37–38, 280 N.W.2d 725 (1979); *State v. Boyce*, 75 Wis. 2d 452, 462–63, 249 N.W.2d 758 (1977).

Furthermore, other cases seem to say that when a defendant's motion for a new trial is based on new evidence, the defendant is in effect alleging a denial of due process on the ground that there is insufficient evidence to support the conviction. The court of appeals has characterized this question as one of due process and declared that whether due process warrants retrial is a constitutional question subject to *de novo* review. *State v. Coogan*, 154 Wis. 2d 387, 394–95, 453 N.W.2d 186 (Ct. App. 1990). Thus, as the State's brief explains, only when a defendant does not seek plea withdrawal on the basis of a constitutional violation, a circuit court's determination of the plea withdrawal motion is reviewed for erroneous exercise of discretion. Brief for State at 15. *See, e.g., State v. Krieger*, 163 Wis. 2d 241, 249–50, 471 N.W.2d 599 (Ct. App. 1991).

[6] In *State v. Terrance J.W.*, 202 Wis. 2d 497, 501–02, 550 N.W.2d 445 (Ct. App. 1996), while the court of appeals stated that the erroneous exercise of discretion standard is the applicable standard for review of an order on a motion for a new trial, it applied the clearly erroneous standard to the circuit court's finding that the recanting witness was incredible.

[7] The supreme court has said:

Usually on appeal to review the denial of a motion for a new trial on the ground of newly discovered evidence, the test applied is whether the trial court abused its judicial discretion. However, as

485

¶ 42. Because a defendant must satisfy each of the five elements, *State v. Sarinske*, 91 Wis. 2d 14, 38, 280 N.W.2d 725 (1979); *State v. Kaster*, 148 Wis. 2d 789, 801, 436 N.W.2d 891 (Ct. App. 1989), I conclude that a circuit court should make a separate finding for each element it considers. Thus, I would have the standard of review depend on the element being considered.

¶ 43. The first two elements of the five-part test, whether the evidence was discovered after trial and whether the defendant was not negligent in seeking evidence, are factual determinations. A circuit court's determination of these issues should therefore be reviewed by an appellate court using the clearly erroneous standard, the standard applied to factual findings. Wis. Stat. § 805.17(2) (1995–96).[8]

¶ 44. The third and fourth elements of the five-part test, whether the evidence is material to an issue and whether the evidence is not merely cumulative to the evidence presented at trial, are evidentiary determinations that ordinarily are addressed to the discretion of the circuit court. A circuit court's determination of these issues should be reviewed by an appellate court using the erroneous exercise of discretion standard. *State v. Fishnick*, 127 Wis. 2d 247, 257, 378 N.W.2d 272 (1985); *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979).

---

in this case, when a judge who decided such a motion did not hear the evidence at trial this court on appeal starts from scratch and examines the record de novo so that it can consider the facts directly on which the legal issue raised by motion depends.

*State v. Herfel*, 49 Wis. 2d 513, 521, 182 N.W.2d 232 (1971) (citations omitted).

[8] For a discussion of the clearly erroneous standard see *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

¶ 45. I discuss below the standard of review of the fifth element of the test, whether a reasonable probability exists of a different result in a new trial.

### III.

¶ 46. In determining whether a reasonable probability exists of a different result when a jury considers both the evidence in the initial proceeding and the recantation and other new evidence, the circuit court must make two determinations.

¶ 47. First, the circuit court makes a preliminary threshold determination about the credibility of the recanting witness, that is, whether the witness is worthy of belief by the jury. Second, if the recantation is not incredible, the circuit court determines whether a reasonable probability exists of a different result at a new trial.

¶ 48. The first step is for the circuit court to determine whether the recantation is credible, that is, worthy of belief. The circuit court does not determine whether the recantation is true or false. Such a holding would render meaningless the right to have a jury determine the ultimate issue of guilt based on all the evidence. The circuit court merely determines whether the recanting witness is worthy of belief, whether he or she is within the realm of believability, whether the recantation has any indicia of credibility persuasive to a reasonable juror if presented at a new trial.[9]

¶ 49. A circuit court's finding that a recanting witness is incredible as a matter of law is sufficient to support its conclusion that no reasonable probability

---

[9] *State v. Brown*, 96 Wis. 2d 238, 247, 291 N.W.2d 528, *cert. denied*, 449 U.S. 1015 (1980); *Gauthier v. State*, 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965), *cert. denied*, 383 U.S. 916 (1966).

exists of a different result at a new trial. *State v. Terrance J.W.*, 202 Wis. 2d 497, 502, 550 N.W.2d 445 (Ct. App. 1996).[10]

¶ 50. The circuit court did not find coercion or duress in the present case, nor did it find the recantation testimony inherently incredible. The State does not assert that the recanting witness is inherently incredible.

¶ 51. An appellate court should not upset a finding of credibility unless it is clearly erroneous. *Terrance J.W.*, 202 Wis. 2d at 502. This standard of review of the circuit court's finding of credibility recognizes that the circuit court is in a much better position than an appellate court to resolve whether the witness is inherently incredible.

¶ 52. Once a circuit court finds that a recanting witness is credible, then it must decide whether the defendant has satisfied the crux of the fifth element: whether a reasonable probability exists of a different result in a new trial.

¶ 53. The court has used different language in describing the fifth element. In some cases the fifth element is set forth as in the majority opinion: "whether a reasonable probability exists of a different result in a new trial." *Krieger*, 163 Wis. 2d at 255.

¶ 54. The element has also been stated as: "it must be reasonably probable that a different result *would* be reached on a new trial." *State v. Herfel*, 49 Wis. 2d 513, 522, 182 N.W.2d 232 (1971) (emphasis

_____

[10] Because the credibility determination is intimately connected to the reasonable probability determination it is not strictly necessary to conduct a two-part inquiry in the manner I have set out. Nonetheless, in the interest of providing guidance to the trial court, many courts distinguish the two inquiries and I think it is wise to do so.

added) (citing *Estate of Eannelli*, 269 Wis. 192, 68 N.W.2d 791 (1955)); *Estate of Teasdale*, 264 Wis. 1, 4, 58 N.W.2d 404 (1953) (emphasis added). This formulation is also used in the majority opinion. Majority op. at 474.

¶ 55. A third phrasing is that "it must be reasonably probable that a different result *will* be reached on a new trial." *Eannelli*, 269 Wis. at 214 (emphasis added) (citing *Teasdale*).

¶ 56. The court of appeals in the present case stated the standard as whether "a reasonable jury could accept the recantation as true" and whether "there is a reasonable probability of a different result." *State v. McCallum*, 198 Wis. 2d 149, 158, 542 N.W.2d 184 (Ct. App. 1995).

¶ 57. Do these various formulations of the fifth element differ? Do they give sufficient guidance to the circuit court and court of appeals? The majority opinion gathers these formulations into one formulation, namely that the probability of a different result in a criminal case exists when there is a reasonable probability that a jury would have a reasonable doubt as to the defendant's guilt. Majority op. at 474–76.

¶ 58. I would gather these various formulations of the fifth element into the test for reversal for prejudicial error with which this court has struggled and with which we are all familiar. Indeed recantation testimony discovered after trial can be recast, for purposes of analysis, as testimony that was erroneously omitted from the initial trial.

¶ 59. The prejudicial error test states, in language similar to that used in manifest injustice cases, that an error is prejudicial and reversal of a conviction is required if "there is a reasonable probability that, absent the errors, the factfinder would have had a rea-

sonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 694–95 (1984), *discussed in State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). Reasonable probability for purposes of prejudicial error is not strictly outcome determinative. Reasonable probability does not mean that it is more likely than not that a new trial would produce a different result.[11] The circuit court does not determine which of the two statements is more credible; the circuit court is not to act as a thirteenth juror.[12] "[A] reasonable probability of a different outcome is one that raises a reasonable doubt about guilt, a 'probability sufficient to undermine confidence in the outcome' of the proceeding." *Dyess*, 124 Wis. 2d at 544–545, *quoting Strickland*, 466 U.S. at 694.

¶ 60. I conclude that a circuit court may usefully apply the prejudicial error inquiry to the fifth element of our recantation test. Thus, when a witness' recantation and other new evidence undermine the circuit court's confidence in the correctness of the outcome at the original trial or hearing, a new trial should be ordered.

---

[11] *Strickland v. Washington*, 466 U.S. 668, 693–97 (1984); *State v. Dyess*, 124 Wis. 2d 525, 541–45, 370 N.W.2d 222 (1985); *State v. Pitsch*, 124 Wis. 2d 628, 640–42, 369 N.W.2d 711 (1985); *State v. Ludwig*, 124 Wis. 2d 600, 609, 369 N.W.2d 722 (1985).

[12] As the court of appeals explained in the present case: "It is the jury's role to determine which of the two contradictory statements it believes." *State v. McCallum*, 198 Wis. 2d 149, 159, 542 N.W.2d 184 (Ct. App. 1995). *See also Terrance J.W.*, 202 Wis. 2d at 502.

For a thoughtful discussion of this important point see *Brown v. State*, 816 P.2d 818, 866–68 (Wyo. 1991) (Thomas, J., dissenting). *See also State v. Smith*, 909 P.2d 1335, 1340 (Wash. App. 1996), *rev'd on other grounds*, 930 P.2d 917 (Wash. 1997); *People v. Minnick*, 263 Cal. Rptr. 316, 317–18 (Cal. App. 1989).

¶ 61. On appellate review, I conclude that an appellate court should review the reasonable probability determination under the erroneous exercise of discretion standard. Having heard both the evidence at the original trial or hearing, or even just the evidence on the motion hearing, a circuit court is in a better position than an appellate court to determine whether confidence in the correctness of the outcome at the original trial or hearing has been undermined.[13]

For the reasons set forth, I write separately.

---

[13] When an appellate court reviews a ruling on a motion for a new trial based on a recantation it is not strictly limited by its erroneous exercise of discretion review. An appellate court may reverse an order denying a new trial when the appellate court determines, after independent review, that the real controversy has not been fully tried or that it is probable that justice has for any reason miscarried. Wis. Stat. §§ 751.06 (1995–96) (supreme court), 752.35 (1995–96) (court of appeals).