COURT OF APPEALS
DECISION
DATED AND FILED

July 2, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP502-CR**

Cir. Ct. No. **2016CF330**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

ERIC J. WOLLER,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Lincoln County:  ROBERT R. RUSSELL, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Eric Woller appeals from a judgment of conviction for two counts of third-degree sexual assault, and an order denying postconviction

relief. Woller argues the circuit court erroneously exercised its discretion by denying a motion to withdraw his no-contest pleas based upon newly discovered evidence. We reject his argument and affirm.

## BACKGROUND

¶2 Woller was the boyfriend of the victim's mother. The victim told authorities that Woller had molested her countless times when she was eleven years old. She was interviewed under oath at the Children's Advocacy Center in Wausau and stated Woller had touched her vagina with his hand and touched her vagina and nipples with his mouth. The victim also said the contact happened multiple times at two different homes. She said that "it would happen almost every time that her mother and grandmother would go to the laundromat."

¶3 At about the same time criminal charges were filed against Woller, the victim recanted her accusations, telling her mother that Woller had not done the things she accused him of doing to her. Her mother called the police, telling them the victim was confused and having a hard time dealing with Woller not being there. A detective interviewed the victim under oath. The victim wrote in a statement to the police: "I feel mixed up. My real dad had touched me. I feel mixed up about what happened. I'm not sure if this did or didn't happen. I did not lie … about what had happened."

¶4 The victim's recantation was memorialized in several documents by the sheriff's department, as was the statement by the victim's mother detailing what the victim told her. Woller received these documents from his attorney "about a month before" the plea hearing. Woller's attorney also hired a private investigator to interview the victim and her mother, but despite his attempts, the investigator was unable to successfully interview them at that time.

¶5    Despite knowing about the recantation and receiving documents memorializing them, Woller pleaded no contest to two counts of sexually assaulting the victim.  The circuit court adopted the parties' joint sentencing recommendation, consisting of a withheld sentence and six years' probation with 120 days' conditional jail time.  Sixty days' jail was ordered to be served upon sentencing as a condition of probation and sixty days' additional jail time was stayed but available to be used as a sanction for rules violations.

¶6    Woller's private investigator was eventually able to interview the victim and her mother.  The victim repeated her recantation, claiming her real father, not Woller, had molested her.  She said she was "confused" when she initially blamed Woller.  Woller sought postconviction plea withdrawal on the grounds of newly discovered evidence.[1]

¶7    The victim testified at the postconviction hearing.  She stated that her real dad had molested her; Woller had not molested her; and that she had accused Woller of molesting her because she had "mixed up" her real dad with Woller.  However, the victim also said her father had touched her breasts over her clothing, used his hands but not his mouth, and did not touch her vagina.  Her further testimony that her father had touched her breasts only one time at one house was also inconsistent with her initial accusation against Woller.  The victim also testified that she wanted Woller to come back and live with her.  She further

---

[1] Woller also raised other grounds for plea withdrawal in the circuit court, regarding the sufficiency of the colloquy in advising him of the court's authority to impose a sentence greater than the State's recommendation, and ineffective assistance of counsel for failing to review the audio and video recording of the Child Advocacy Center video.  However, Woller represents in his brief-in-chief to this court that he is not raising these issues on appeal.  Thus, only his "request to withdraw his plea due to manifest injustice because of newly discovered evidence" is addressed.

stated that she did not like her real father, who did not "really care" about her, and she viewed Woller as her father. Without Woller, she did not have anyone who was like a real father, but she wanted one. The circuit court denied the postconviction motion, and this appeal follows.

## DISCUSSION

¶8      A defendant must satisfy five requirements to obtain relief based upon newly discovered evidence. To meet the first four elements, a defendant must show by clear and convincing evidence that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. *See* ***State v. Avery***, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60. If the defendant is able to establish these four elements, then a court must consider, as a fifth requirement, whether a reasonable probability exists that a different result would be reached at trial. ***Id.***, ¶25. When the defendant's proffered newly discovered evidence is a recantation, however, it also must meet a sixth requirement—it must be corroborated by other newly discovered evidence. ***State v. Ferguson***, 2014 WI App 48, ¶24, 354 Wis. 2d 253, 847 N.W.2d 900. We review the circuit court's determination regarding newly discovered evidence for an erroneous exercise of discretion. *See Avery*, 345 Wis. 2d 407, ¶22.

¶9      On appeal, the State assumes for the sake of argument that Woller has satisfied the first, second, third, and fifth prongs of the newly discovered evidence test. Therefore, only the fourth and sixth elements are at issue. Under the fourth element, we conclude Woller has failed to show by clear and convincing evidence that the evidence is not merely cumulative. We further conclude, under

the sixth element, that the postconviction evidence is not corroborated by other newly discovered evidence.

¶10 Newly discovered evidence is cumulative when it tends to address a fact established by existing evidence. *State v. McAlister*, 2018 WI 34, ¶37, 380 Wis. 2d 684, 911 N.W.2d 77. Prior to the conviction in the present case, the victim told her mother that Woller had not done the things to her that she had accused him of doing. A few days later, the victim wrote in a statement to police, "I feel mixed up. My real dad had touched me. I feel mixed up about what happened. I'm not sure if this did or didn't happen. I did not lie … about what had happened." Similarly, in her postconviction recantation, the victim said her real dad had molested her, Woller had not molested her, and that she had accused Woller of molesting her because she had "mixed up" her real dad with Woller.

¶11 The victim thus recanted both before and after Woller was convicted. The victim's recantation after Woller was convicted addressed facts established by evidence existing prior to his conviction: (1) Woller had not molested her; (2) her biological father had molested her; and (3) she was "mixed up." Her postconviction recantation is thus cumulative with her preconviction one, and Woller has failed to justify plea withdrawal by clear and convincing evidence. For this reason alone, the circuit court properly rejected Woller's request for plea withdrawal.[2]

---

[2] We may rely on this rationale even though the prosecutor and the circuit court did not rely upon it below, as we may sustain a lower court's holding on a theory or reasoning not presented to the lower court. *See State v. Holt*, 128 Wis. 2d 110, 124-26, 382 N.W.2d 679 (Ct. App. 1985).

¶12    In addition, Woller's request for plea withdrawal is meritless because the victim's postconviction recantation lacked sufficient corroboration under the sixth element of the newly discovered evidence test. *Id.*, ¶33. Our supreme court has explained that corroboration is required because recantations are "inherently unreliable." *Id.*, ¶¶33, 56. The recanting witness is admitting that he or she lied under oath. Either the original testimony or the recantation is false. *Id.*, ¶56.

¶13    Therefore, unless a defendant has newly discovered physical evidence or witnesses to the crime, he or she must meet a two-pronged corroboration test. *State v. McCallum*, 208 Wis. 2d 463, 476, 561 N.W.2d 707 (1997). Under that test, corroboration requires newly discovered evidence of both: (1) a feasible motive for the initial false statement; and (2) circumstantial guarantees of the trustworthiness of the recantation. *McAlister*, 380 Wis. 2d 684, ¶58.

¶14    Regarding the feasible motive prong, the newly discovered requirement is met if the victim's reason for the initial accusation was first known after the defendant was convicted. *See McCallum*, 208 Wis. 2d at 478. In *McAlister*, our supreme court concluded that the motive for accusing McAlister failed this requirement because "this motive was fully explored at trial and is not newly discovered." *McAlister*, 380 Wis. 2d 684, ¶59.

¶15    Similarly, in the present case the feasible reason for the victim's initial accusation against Woller was not newly discovered. Woller has not provided newly discovered evidence of a feasible motive for the victim's allegedly false initial accusation against him. In fact, the victim's only explanation for recanting her initial accusation against Woller was that she was confused about

what really happened and she had "mixed up" Woller with her real father. But she never explained why or how that "mix up" happened, or why the details of her accusations changed so greatly when she shifted the blame from Woller to her real father.

¶16 More importantly, however, the feasible reason for the victim's initial accusation against Woller is not newly discovered. Four months before Woller was convicted, the victim told her mother that Woller "didn't do this to her" and that "she is mixed up." The victim also wrote in a statement to police, "I feel mixed up about what happened. I'm not sure if this did or didn't happen. I did not lie … about what happened." The circuit court specifically found that Woller "was aware of the recantations prior to the plea hearing." Woller himself testified at the postconviction hearing that his trial counsel had provided the recantation documents to him "about a month before" the plea hearing. Woller also conceded that he was aware of the recantation when he was considering the plea offer.

¶17 Accordingly, before Woller was convicted he knew or should have known about the victim's feasible reason for allegedly falsely accusing him. That feasible reason is therefore not newly discovered. The victim's postconviction recantation therefore fails to provide a basis for Woller's plea withdrawal because the recantation is not corroborated by newly discovered evidence of a feasible motive for the initial accusation against Woller.

¶18 In any event, Woller's postconviction motion also fails under the second prong of the corroboration requirement because he has not shown the victim's recantation is trustworthy. Factors that show a recantation is trustworthy are: (1) the recantation is internally consistent; (2) the recantation is consistent

7

with circumstances existing when the recanting witness made his or her initial charge; and (3) the recanting witness knows he or she could face criminal consequences stemming from the earlier false accusation. *See McCallum*, 208 Wis. 2d at 478. Other factors may include the lack of external pressures encouraging the recantation, and a persuasive explanation for both testifying falsely and recanting.

¶19 Here, the victim's recantation was internally inconsistent, as she changed her claims about the nature of the sexual contact with her father as compared to Woller. In addition, her recantation was inconsistent with the circumstances that existed when she first accused Woller—the fact that the victim was living with Woller when she accused him of molesting her. In addition, there is no indication—and Woller does not seem to argue—that the victim understood she could face criminal consequences for falsely accusing him. Furthermore, the victim had pressure to recant. After she accused Woller of molestation and he was arrested, the victim told her mother she was "having a hard time dealing with Woller not being there." Without Woller being around, the victim did not have anyone who was like a father to her, but she wanted one. The victim wanted Woller to come back and live with her. The victim's desire for a father figure is evidence of pressure to recant that shows unreliability.

¶20 Moreover, the victim gave unpersuasive explanations for her initial recantation of her accusations against Woller. The victim never explained why or how the alleged "mix up" happened with Woller and her real father, or why the details of her accusations changed so greatly when she shifted the blame to her real father. At the Children's Advocacy Center, the victim said that Woller had touched her vagina with his hand and touched her nipples and vagina with his mouth. She said "it would happen almost every time that her mother and

8

grandmother would go to the laundromat." But in her postconviction recantation, the victim said her real father had touched her breasts with his hands but not his mouth, and he did not touch her vagina. She also seemed to say, inconsistently with her accusations against Woller, that her real father had touched her breasts only one time at one house. This lack of a persuasive explanation shows the victim's attempts to blame her real father instead of Woller were untrustworthy. The circuit court properly denied Woller's postconviction motion to withdraw his pleas.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).