COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP538-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2005CF4983

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DOMINIQUE LASHAWN GRAFTON,

DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Dominique Lashawn Grafton appeals from orders of the circuit court that denied his motions for resentencing and reconsideration.

Grafton sought resentencing based on newly discovered evidence or, alternatively, because he had been sentenced on inaccurate information. The circuit court denied the motions, concluding that: (1) the newly discovered evidence—a purported recantation—was insufficiently corroborated and would not yield a different result, and (2) Grafton had not met his burden for an inaccurate information claim. We agree with the circuit court and, thus, affirm the orders.

## BACKGROUND

¶2    In 2006, a jury convicted Grafton of felony murder as a lesser-included offense of first-degree intentional homicide while armed; an armed robbery charge formed the predicate felony. The trial court sentenced Grafton to forty-eight years of imprisonment.[1] Grafton's appellate counsel filed a no-merit report, to which Grafton responded. In our opinion, we set forth facts surrounding the underlying incident.

> In the early morning hours of August 30, 2005, Terrance Thomas drove a Chevrolet Suburban to a Milwaukee gas station for gas. The Suburban had custom tires and wheel rims. A man approached the Suburban as Thomas was getting out of it, shot him, and then stole the car. Thomas died almost immediately. About two-and-one-half hours later, the Suburban, which had been stripped and put up on blocks, was found in a rear yard a few miles from the gas station. Its tires and wheel rims had been removed and it had been set on fire.
>
> ....
>
> [D.B.] had been with Thomas in the Suburban…. [She] testified that she had fallen asleep and she was

---

[1] The Honorable Mel Flanagan presided at trial and imposed the sentence and will be referred to as the trial court. The Honorable Jeffrey A. Wagner, who reviewed the resentencing and reconsideration motions that are before us on appeal, as well as a prior newly discovered evidence motion, will be referred to as the circuit court.

2

awakened by a gunshot. She looked toward the driver's seat and saw "smoke" coming out of Thomas's shoulder. [D.B.] testified that she ran out of the car after Thomas was shot. She was in "shock" and a "panic," and she ended up coming back to the Suburban. [D.B.] testified that when she returned to the Suburban, the man who had shot Thomas was near the driver's door…. [She] testified that she looked at the man for about five to ten seconds before he got into the Suburban and drove away. [D.B.] identified Grafton as the man who shot Thomas and stole the Suburban…. [She] testified that there was "no question" in her mind that Grafton was the shooter.

Jerome Davis, a co-defendant, also testified at trial. Davis testified that he, Grafton, Antoine Payne and Keith Hughes were out driving when Grafton told Davis to "bust a U-turn" after he saw the Suburban at the gas station…. After Davis parked his car near the station, Payne and Grafton got out of the car. Davis testified that Grafton pulled out a .380 handgun and "r[a]n over there [to] rob [the] dude." Within five minutes, Davis heard a gunshot. Payne got back in the car and they left. Payne said that Grafton had "popped" the man…. [A]fter the Suburban was stripped, Hughes poured gasoline in the front seat and set it on fire. Davis later tried to sell the rims, and had one of the rims with him when he was arrested.

….

Several other persons involved in the stripping of the Suburban also testified at trial. Devontes King testified that he heard Grafton say that he had to "pop the [guy]." James Jefferson testified that … Grafton had told him about the robbery. Frederick Brookshire testified that he heard Grafton call[] Payne "a pussy" because Payne ran when he heard the shot at the gas station.

See *State v. Grafton*, No. 2007AP158-CRNM, unpublished op. and order at 2-4 (WI App Mar. 24, 2008) (footnotes omitted; some brackets in original). We summarily affirmed Grafton's conviction, and the supreme court denied his petition for review.

¶3    In December 2014, Grafton filed a motion for resentencing based on newly discovered evidence. The motion was accompanied by an affidavit, dated

September 12, 2013, from co-actor Payne. In this affidavit, "Payne averred that he gave police a false statement identifying Grafton as the shooter. Payne further asserted that Grafton did not 'point or discharge any weapon,' that there were multiple shooters, and that Payne shot his weapon and 'may have been responsible' for Thomas's death." *State v. Grafton*, No. 2015AP218, unpublished slip op. ¶4 (WI App Sept. 30, 2016). The circuit court denied Grafton's motion after concluding that Payne's affidavit was not sufficiently corroborated. *Id.* In its decision, the circuit court noted the lack of detail in Payne's affidavit and highlighted inconsistencies between the information contained within the affidavit and the evidence presented at Grafton's and Payne's trials. *See id.* We affirmed.

¶4    In December 2018, Grafton filed the motion for resentencing that underlies this appeal. He again claimed to have newly discovered evidence in the form of an affidavit from Payne. In a new affidavit, dated May 29, 2018, Payne now claimed that "there was only one shot and that shot was fired by" him. Payne's affidavit was accompanied by three other affidavits. One affidavit, from Payne's cellmate Lawrence Paine (Lawrence), was dated February 28, 2018, and claimed that Payne told Lawrence that his gun went off by accident. Another affidavit, from Freddie Nash, was dated April 10, 2018, and described "a day in 2011" when Lawrence told him that Payne admitted to being the shooter. The final affidavit, dated August 29, 2012, came from Cory Welch, who claimed that Payne told him that he was the one who actually shot Thomas. Based on the four affidavits, Grafton alternatively asserted that he should be resentenced because the documents showed that the trial court had sentenced him based on "inaccurate information" that he was the shooter.

¶5    The circuit court denied Grafton's newly discovered evidence motion, concluding there was no reasonable probability of a different result.

Grafton then moved for reconsideration, as the circuit court's order did not expressly address his inaccurate information claim. The circuit court denied reconsideration because it concluded that Grafton had not established there was actually any inaccurate information. Grafton appeals.

## DISCUSSION

### I. Newly Discovered Evidence

¶6 The decision to grant relief based on newly discovered evidence rests in the circuit court's discretion.[2] *See State v. Plude*, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. A defendant seeking relief based on newly discovered evidence must establish "'by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking [the] evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *See State v. Armstrong*, 2005 WI 119, ¶161, 283 Wis. 2d 639, 700 N.W.2d 98 (quoting *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997)). If the defendant satisfies these requirements, "'the circuit court must determine whether a reasonable probability exists that a different result would be reached'" in a new proceeding. *See id.* (quoting *McCallum*, 208 Wis. 2d at 473).

---

[2] Newly discovered evidence is typically employed to obtain a new trial, not resentencing. *See State v. Plude*, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. As we noted in Grafton's prior appeal, the "newly discovered" facts alleged lend themselves more to a new sentencing factor analysis, for which the relief is sentencing modification. *See State v. Grafton*, No. 2015AP218, unpublished slip op. ¶5 n.1 (WI App Sept. 30, 2016); *see also State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828. However, in this appeal, as in the prior appeal, both the circuit court and the State analyzed Grafton's claim under the newly discovered evidence test; we will therefore do the same.

¶7　Even if we accepted that Grafton satisfied the first four elements of the newly discovered evidence test, his claim nevertheless fails because there is no reasonable probability of a different result. While Payne's newest affidavit purports to take greater responsibility for Thomas's death, it does not undercut the evidence pointing to Grafton as the shooter.

¶8　D.B. testified that she saw the shooter before he drove off in the Suburban, that she identified Grafton in a line up, and that there was "no question" in her mind that he was the shooter. Grafton counters that D.B. only saw him near the driver's door as she returned to the Suburban, and it is erroneous to assume that because he drove off in the Suburban that he was the shooter. However, D.B.'s testimony was not the only evidence to indicate Grafton was the shooter.

¶9　Co-defendant Davis testified that Grafton told him to "bust a U-turn" as they passed the Suburban, and that Grafton stated his kids "had to eat" and "had to get school clothes." When Davis parked the vehicle, Grafton and Payne got out of the car, and Grafton had a gun. Within five minutes, Davis heard a gunshot; Payne returned to Davis's vehicle and stated that Grafton had "popped" the guy. Another person also testified that Grafton said he had to "pop" Thomas.

¶10　When interviewed by police, Payne denied being the shooter. At his own trial,[3] Payne's defense was that he did not intentionally aid and abet the robbery and he had nothing to do with the shooting. At his sentencing hearing, Payne apologized to Thomas's family and lamented having to serve time for

---

[3] Payne was charged with and convicted of felony murder, criminal damage to property, and driving or operating a motor vehicle without the owner's consent, all as a party to a crime. He received consecutive sentences totaling thirty years' imprisonment.

someone else's acts. Seven years later, in 2013, Payne still did not directly claim he was the shooter. Instead, he said that he did not see Grafton with a gun, but he (Payne) had fired his own weapon, which "may have been responsible" for Thomas's death. Payne also claimed there had been multiple shooters, although there was no evidence at Grafton's trial that anyone other than Grafton had approached Thomas with a gun.

¶11    Payne's latest affidavit now purports to take additional responsibility for Thomas's death, insofar as Payne claims he pointed his gun at Thomas; that "when [his] gun fired," it was touching Thomas's arm; and that there was only a single shot. But any circuit court conducting a new sentencing hearing would still hear Payne's prior denials and shifting stories, which undermine any probability of a different result for Grafton.

¶12    Making the probability of a different result even less reasonable is the fact that Payne's newest recantation is not sufficiently corroborated. When newly discovered evidence is a newly discovered recantation, it must be corroborated by other newly discovered evidence. *See State v. Mayo*, 217 Wis. 2d 217, 226, 579 N.W.2d 768 (Ct. App. 1998). Corroboration is required because "[r]ecantations are inherently unreliable." *McCallum*, 208 Wis. 2d at 476. The corroboration requirement is satisfied if "there is a feasible motive for the initial false statement" and "there are circumstantial guarantees of trustworthiness of the recantation." *Id.* at 477-78.

¶13    Here, there are no circumstantial guarantees of trustworthiness. Though Payne now claims to have a guilty conscience because Grafton is serving a longer sentence than him, Payne offers no explanation as to why he failed to take responsibility in his first recantation or why he waited four years after his first

attempt to downplay Grafton's culpability was rebuffed before trying again. Further, Payne's two affidavits are inconsistent. *See id.* at 477. In the first affidavit, Grafton did not have a gun; in the second affidavit, he had a gun but did not fire it. In the first affidavit, multiple shots were fired when Thomas was struck; in the second affidavit, there was only one shot at Thomas's window and multiple shots were not fired until Grafton and Davis were driving from the scene.

¶14 The "supporting" affidavits meant to bolster Payne's are also insufficient to provide any circumstantial guarantees of trustworthiness. First, Lawrence reported that Payne told him the gun "went off by accident," which is inconsistent with Payne's averment that "[t]here was only one shot and that shot was fired by me." Indeed, Payne's statement suggests either that he intentionally shot the weapon or that he has carefully constructed his affidavit to avoid directly declaring himself to be the shooter. Second, Welch's affidavit predates both of Payne's affidavits and Grafton's motions, and Grafton does not indicate when he came into possession of Welch's information.[4] Finally, Nash's affidavit does not contain any information directly from Payne; it says only that Lawrence told Nash that Payne claimed to be the shooter. Indeed, none of these three "supporting" individuals has any personal or independent knowledge of the circumstances of the case, much less any independent basis to know who the shooter was. Thus, we agree with the circuit court that Payne's new recantation is insufficiently corroborated and that there is no reasonable probability of a different result at a new proceeding, so the circuit court did not err when it denied Grafton's motion for resentencing based on newly discovered evidence.

---

[4] If Grafton was aware of Welch's affidavit prior to his first motion for resentencing, then by definition it is not newly discovered and cannot be used as corroboration.

## *II. Inaccurate Information*

¶15    As noted, Grafton's latest motion for resentencing had alleged both newly discovered evidence and inaccurate sentencing information, but the order denying resentencing only directly addressed his newly discovered evidence claim. Thus, Grafton moved for reconsideration, reasserting his claim that he was sentenced based on inaccurate information.

¶16    A defendant who seeks resentencing because the court relied on inaccurate information must show by clear and convincing evidence that the information before the sentencing court was inaccurate and that the court actually relied on the inaccurate information in the sentencing. *See **State v. Tiepelman***, 2006 WI 66, ¶2, 291 Wis. 2d 179, 717 N.W.2d 1. Once actual reliance on inaccurate information is shown, the burden shifts to the State to prove the error was harmless. *See **id.***, ¶3. Proving inaccuracy is a threshold question: "A defendant 'cannot show actual reliance on inaccurate information if the information is accurate.'" ***State v. Travis***, 2013 WI 38, ¶22, 347 Wis. 2d 142, 832 N.W.2d 491 (citation omitted). The circuit court denied reconsideration because it was unconvinced that Grafton had shown the sentencing court actually relied on inaccurate information, thus failing to satisfy ***Tiepelman***.

¶17    The only "inaccuracy" Grafton identifies is his claim that he was not the shooter, and he reiterates that D.B. could only be sure she was identifying the person getting into the Suburban, not the shooter. As noted above, however, D.B.'s testimony was not the only evidence pointing to Grafton as the shooter, and Payne expressly denied being the shooter at his own trial and sentencing hearing. We therefore agree with the circuit court that Grafton has not established that there was any inaccurate information before the trial court at sentencing, so the circuit

court did not err in rejecting the claims of inaccurate sentencing information and denying the motion for reconsideration.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.