COURT OF APPEALS
DECISION
DATED AND FILED

February 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP1472**

Cir. Ct. No. 2007CF1714

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

RUDOLPH D. POWELLS,

     DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Rudolph D. Powells appeals an order denying his motion for postconviction relief without a hearing.[1]   Powells argues that he is entitled to an evidentiary hearing to address two affidavits that contain newly discovered evidence that he contends warrant a new trial.   He additionally argues that this court should grant him a new trial because the real controversy was not fully tried.   For the reasons set forth below, we disagree and affirm.

## BACKGROUND

¶2    In the early morning hours of August 7, 2005, two masked intruders broke into an apartment and demanded money and marijuana from the residents. One of the intruders shot and killed one of the residents in the process of making the demand.

¶3    Police arrived at the scene and recovered a .40 caliber shell casing near the resident's body and a black mask near a side door to the apartment building.   The black mask fit the description provided by one of the residents of the type of masks that the intruders were wearing.   The mask was swabbed for possible DNA and was sent to the state crime lab for testing.   The DNA testing showed that the mask contained Powells' DNA.

¶4    The shell casing found near the body also matched a shell casing found at the scene of a domestic violence incident between Powells and his girlfriend, M.C., on August 18, 2005, just days after the robbery.   M.C. told the

---

[1] The Honorable Patricia McMahon presided over Powells' trial and sentencing and issued the decision and order addressing Powells' first postconviction motion.   The Honorable Jeffrey A. Wagner presided over the proceedings following Powells' first postconviction motion and issued the decision and order that is the subject of this appeal.   We refer to Judge McMahon as the trial court and Judge Wagner as the postconviction court.

police that she kicked Powells out of her home that day, she followed Powells outside, and while outside, she and Powells got into a fight and they struggled to gain control over a gun that Powells had, and the gun discharged. During their investigation of the incident, the police recovered the shell casing that discharged from Powells' gun. Further, the gun matching both the shell casing found near the body and at the scene of the domestic violence incident was recovered over a year later, at the home of Julius Arberry during the execution of a search warrant that was unrelated to this case.

¶5 The State charged Powells on April 6, 2007, with first-degree reckless homicide as a party to a crime, attempted armed robbery as a party to a crime, and possession of a firearm by a felon, all as a repeat offender. The case proceeded to a jury trial. At trial, the State argued that the fact that the shell casing found near the body and the shell casing found at the scene of the domestic violence incident both matched the gun Powells sold to Arberry, showed that the gun was used in the robbery, and Powells possessed the gun at the time of the robbery.

¶6 Powells was convicted on all counts and sentenced to a global sentence of eighty years of imprisonment, composed of fifty years of initial confinement and thirty years of extended supervision.

¶7 The State subpoenaed M.C. to testify at Powells' trial to make the link between Powells and the gun used in the armed robbery, but M.C. never appeared to testify. To make that link, the State introduced the following facts: (1) a 911 call came from a phone number registered to Powells, (2) the residence where the 911 call was made was listed as Powells' residence, and (3) the shell casing found at the armed robbery matched the shell casing that was found outside

3

of the location where the 911 call was placed.  The State also introduced testimony from Marlon Bates that Powells sold Arberry a gun and that Powells told Arberry that the gun had a "homi" on it—meaning a homicide.  The State contended that these facts showed that the gun Powells sold to Arberry was the gun involved in the robbery.  Bates also testified that Powells and M.C. were in a relationship around the time of the robbery, and the two of them lived together.

¶8      Powells filed his first postconviction motion seeking a new trial in 2009, and his second postconviction motion in 2012.  Both motions were denied without hearings and affirmed by this court.[2]  On April 30, 2019, Powells filed his third postconviction motion seeking a new trial.  In his motion, Powells alleged that he was entitled to a new trial based on newly discovered evidence in the form of two affidavits from M.C. and M.C.'s son, K.L., recanting their original statements to police about the domestic violence incident on August 18, 2005.

¶9      M.C. now states in her affidavit that Bates, not Powells, was involved in the domestic violence incident for which she called police on August 18, 2005.  She avers that Bates was at her apartment on August 18th, when she received a call from Powells who stated that he was coming over.  M.C. avers that she proceeded to tell Bates to leave, Bates became upset because he did not like that M.C. continued her relationship with Powells, and the incident M.C. reported in which the gun was shot outside the apartment, followed.  She further avers that she lied to police when she originally reported the incident and told

---

[2] *State v. Powells*, No. 2010AP533-CR, unpublished slip op. (WI App Jan. 13, 2011), and *State v. Powells*, No. 2012AP2688, unpublished slip op. (WI App Nov. 12, 2014).

police that Powells was involved because she feared that Bates would beat her, if she told police Bates was the one involved in the domestic violence incident.

¶10 At the time of the incident, M.C. avers that she was in a relationship with both Powells and Bates and that she was pregnant, but not sure if Bates or Powells was the baby's father. She believed, though, that Powells would not hit her while she was pregnant, even if she lied to the police about him being the individual involved in the incident. According to her affidavit, "[i]f [she] knew that the shell casing the police found at [her] house would link Powells to a murder, [she] never would have lied about who shot the gun" during the domestic violence incident. M.C. then avers that she did not respond to the subpoena to testify at Powells' trial because she had lied to the police. She avers that she did not understand that "things would go so badly" for Powells because of her lie. She finally avers that she later discovered that Powells was the father of her child, that she visited Powells for the first two years that he was in prison, and that she "deeply regret[s]" not having come forward sooner to "correct" her lie.

¶11 The second affidavit is from K.L., M.C.'s son, who was six years old at the time of the domestic violence incident. In his affidavit, K.L. avers that Bates was the individual involved in the domestic violence incident and that he lied to the police at his mother's request. He further avers that M.C. threatened to "whoop" him if he did not tell the police that Powells was involved in the incident.

¶12 The postconviction court denied Powells' motion without a hearing, finding that the affidavits were not newly discovered evidence that entitled Powells to a new trial. In its decision and order, the postconviction court found that the affidavits were not corroborated, nor did the affidavits contain information

resulting in a reasonable probability of a different result at Powells' trial. This appeal follows.

## DISCUSSION

¶13    "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "If the motion raises such facts, the circuit court must hold an evidentiary hearing." *Id.*, ¶9. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," a trial court may deny a postconviction motion without a hearing. *See id.* Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*. *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶14    "The decision to grant or deny a motion for a new trial based on newly[]discovered evidence is committed to the circuit court's discretion." *State v. Plude*, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. "A circuit court erroneously exercises its discretion when it applies an incorrect legal standard to newly[]discovered evidence." *Id.*

¶15    To be entitled to a new trial based on newly discovered evidence "a defendant must prove:  '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *Id.*, ¶32 (citation omitted). "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury

heard the newly[]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.* "A court reviewing the newly discovered evidence should consider whether a jury would find that the evidence 'had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt.'" *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). "This latter determination is a question of law." *Plude*, 310 Wis. 2d 28, ¶33.

¶16 "Finally, when the newly discovered evidence is a witness's recantation, we have stated that the recantation must be corroborated by other newly discovered evidence." *State v. McCallum*, 208 Wis. 2d 463, 473-74, 561 N.W.2d 707 (1997). Corroboration requires "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.* at 477-78.

¶17 In this case, we conclude that the trial court did not erroneously exercise its discretion in denying Powells' motion without a hearing because the record conclusively demonstrates that he is not entitled to relief. We also agree with the trial court that the affidavits do not create a reasonable doubt as to the defendant's guilt and that the affidavits are not corroborated.

¶18 We look to the "old" evidence introduced at Powells' trial and the "new" evidence in M.C.'s and K.L.'s affidavits, and consider whether there is a reasonable probability that the new evidence would create a reasonable doubt in the jury's mind as to Powells' guilt. In light of the evidence introduced at trial, we conclude that there is no reasonable probability that the new evidence would create a reasonable doubt. Importantly, the jury heard testimony that a black mask, similar to one worn by the intruders, contained Powells' DNA. One of the

residents who saw the intruders identified the black mask found by police outside her apartment as a mask worn by one of the intruders. Police involved in the investigation also testified regarding the DNA testing performed on the mask and that Powells' DNA was recovered from the mask. The jury also heard testimony from Bates that the gun Powells sold to Arberry had a "homi" on it.

¶19    M.C.'s and K.L.'s statements do not refute the evidence introduced at trial and at most would serve as impeachment evidence for Bates' testimony that Powells possessed the gun at the time the robbery was committed. "Wisconsin law has long held that impeaching evidence may be enough to warrant a new trial." *Plude*, 310 Wis. 2d 28, ¶47. However, any impeachment effect here is a double-edged sword because the statements M.C. and K.L. now provide in their affidavits could also be used at a new trial to impeach them because they are inconsistent with their original statements to police about the domestic violence incident. Therefore, if they testified consistent with their statements in their affidavits they could be impeached with their original statements to the police. As the postconviction court recognized, "[a]t best, their testimony would present a mixed bag for [Powells]." There is, therefore, no reasonable probability that the jury would have a reasonable doubt as to Powells' guilt and, therefore, the postconviction court did not erroneously exercise its discretion when it concluded that the affidavits do not present newly discovered evidence warranting a hearing, much less a new trial.

¶20    However, even assuming that there is a reasonable probability that the information in the affidavits create a reasonable doubt as to Powells' guilt,

they are not corroborated.[3]   Neither M.C.'s nor K.L.'s motive for falsifying the initial statement to police about Powells being the individual involved in the domestic violence incident is feasible.  *See McCallum*, 208 Wis. 2d at 478.  M.C. indicates that she falsified her first statement because she feared Bates would hurt her, even though she was pregnant.  However, M.C. has since had the baby and discovered that Powells is the father.  Instead of providing a feasible motive for M.C. to have falsified a statement to police, these facts provide a feasible motive for M.C. to fabricate a statement now that Bates was involved in the domestic violence incident in order to free the father of her child from prison.  K.L.'s motive to fabricate a statement to police is similarly flawed because in his affidavit K.L. states that he fabricated his statement when his mother threatened to "whoop" him if he did not.  This reasoning, though, could also provide a motive for him to fabricate a statement now in his affidavit.

¶21   Furthermore, M.C.'s and K.L.'s recantations are not accompanied by circumstantial guarantees of trustworthiness given the length of time that has passed and their inconsistency with evidence introduced at trial.  In her affidavit, M.C. states that she visited Powells in prison for the first two years, yet she also avers that she was not aware that the domestic violence incident would link Powells to a murder and that her failure to appear and testify "would go so badly" for Powells.  Assuming M.C. did not realize at the time she reported the domestic

---

[3] We recognize that the initial statements provided by M.C. and K.L. were statements to the police.  However, if those statements were false they would expose M.C. and K.L. to charges of obstruction.  *See* WIS. STAT. § 946.41 (2017-18).  Therefore, we address their statements as we would a classic recantation of prior in-court testimony.  *See State v. McAlister*, 2018 WI 34, ¶¶54-55, 380 Wis. 2d 684, 911 N.W.2d 77.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

violence incident that her report would link Powells to a murder, she clearly understood that it did by the time she visited Powells in prison. Still, despite becoming immediately aware of just how badly things went for Powells, she waited over a decade to come forward. Without support for her delay and in light of her knowledge of how badly it went for Powells, "the length of time that passed between [Powells'] trial and the submission of the affidavits cuts against concluding that the affidavits are trustworthy." *See State v. McAlister*, 2018 WI 34, ¶60, 380 Wis. 2d 684, 911 N.W.2d 77. K.L.'s recantation likewise suffers from the same flaw because he provides no indication why he waited this long to come forward with this allegedly new information about Bates being involved in the domestic violence incident.

¶22 M.C.'s and K.L.'s recantations are also inconsistent with the circumstances existing at the time of their initial statements to police. Bates testified that Powells sold Arberry a gun with a "homi" on it shortly after the robbery occurred, which put Powells in possession of the gun at the time of the robbery. M.C.'s and K.L.'s original statements to police also put Powells in possession of the gun shortly after the robbery occurred. Bates' testimony and K.L.'s and M.C.'s original statements are consistent with each other, yet now both M.C. and K.L. provide an alternate version of the domestic violence incident in which Bates, not Powells, was in possession of the gun. Without circumstances consistent with their new statements from the time of Powells' trial, M.C.'s and K.L.'s statements in their affidavits lack circumstantial guarantees of trustworthiness. *See McCallum*, 298 Wis. 2d at 478 (noting that a recantation had circumstantial guarantees of trustworthiness because it was "consistent with circumstances existing at the time of [the] initial allegation").

¶23 In addition to his argument that he has newly discovered evidence warranting a new trial, Powells argues that he should be granted a new trial in the interest of justice because the real controversy was not fully tried. He claims that the "cumulative impact of [M.C.'s] recantation" shows that the real controversy, the identity of the shooter at the robbery, was not fully tried. Given our conclusion above that M.C.'s affidavit is not newly discovered evidence, we decline to address this argument further because, without any new evidence to present at a new trial, we conclude that the real controversy was fully tried and this is not an exceptional case warranting an exercise of our power of discretionary reversal. *See Avery*, 345 Wis. 2d 407, ¶¶37-38, 54 (concluding that the interest of justice did not require a new trial where the defendant could present newly discovered photogrammetry evidence).

## CONCLUSION

¶24 In sum, we conclude that Powells has not presented newly discovered evidence requiring the postconviction court to hold an evidentiary hearing. The record conclusively demonstrates that the affidavits do not create a reasonable probability that the jury would have a doubt as to his guilt or that the affidavits are corroborated. The postconviction court, therefore, did not erroneously exercise its discretion when it denied Powells' motion for a new trial without a hearing. We further conclude that Powells is not entitled to a new trial in the interest of justice as the real controversy was fully tried. The postconviction court's decision and order is, therefore, affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11