# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP471-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF3304

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PHILLIP DEWAYNE PETERS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Phillip Dewayne Peters appeals from a judgment convicting him of criminal trespass and second-degree sexual assault and an order of the circuit court denying his motion requesting the court to order additional DNA testing pursuant to WIS. STAT. § 974.07 (2019-20).[1]  We conclude that it is not reasonably probable that Peters would not have been prosecuted or convicted, or that the outcome of the proceedings would have been more favorable, if the DNA testing Peters now requests would have been conducted.  Accordingly, Peters has not met the requirements of § 974.07(7) for the court to order either mandatory or discretionary testing and, therefore, we affirm.

## BACKGROUND

¶2     Peters was charged on July 19, 2017, with criminal trespass, misdemeanor battery, strangulation and suffocation, and second-degree sexual assault arising from an incident on July 13, 2017, involving his former girlfriend, A.S.  The complaint alleged that Peters entered A.S.'s apartment through a window without consent, the two fought, and Peters assaulted her by forcefully inserting his fingers into her anus and then prevented her escape by choking her.

¶3     The case proceeded to a jury trial at which A.S., a neighbor, the nurse who examined A.S. following the assault, a DNA analyst, and investigating officers testified.  Peters did not testify or present any witnesses.[2]

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The Honorable Mark A. Sanders presided over Peters' trial and sentencing.  The Honorable Stephanie Rothstein entered the order denying Peters' postconviction motion.

2

¶4      A.S. testified that she was in a relationship with Peters until the day before the assault, that she ended the relationship after a heated exchange with Peters, and she was avoiding Peters' attempts to contact her. She said that, immediately prior to the assault, she was having dinner in her apartment with a neighbor she knew as "Butch," and "[she] was making food or putting food on plates and [she] heard someone talkin' to the – talkin' through the window and [she] realized it was [Peters] at [her] window." When A.S. saw Peters coming through her window, "[she] was tryin' to push him out of [her] window to stop him from comin' in [her] house but he overpowered [her] so he ended up gettin' in [her] house."

¶5      She testified that Butch left and she and Peters started fighting, with Peters "throw[ing] the first punch."[3] She further testified that they fell on the couch and then to the floor and, when Peters had her pinned on her stomach on the floor, Peters "took both of his fingers and shoved them up [her] anus."[4] A.S. testified that she was "screaming" and "[o]n a level of one to 10," the pain was a "10" and lasted about four days. A.S. described that, once the assault ended, she grabbed her two-year-old son, escaped Peters' attempts to block the door and choke her, and ran out of her apartment to find help.

---

[3] At a prior hearing, A.S. testified that she attacked Peters. During cross-examination, trial counsel questioned A.S. about the inconsistency between her testimony during trial and her statement at the prior hearing about who started the fight. Trial counsel also brought out additional inconsistencies with A.S.'s prior testimony regarding the number of times Peters hit her and whether Peters used a closed fist. He also questioned A.S. about the inconsistencies between the statements she gave to the investigating officers and her trial testimony, including the description in the police report that she was wearing a "thin lounging dress" with her testimony that she was wearing a nightgown.

[4] A.S. was wearing a nightgown with nothing underneath at the time of the assault.

¶6      A.S.'s neighbor[5] testified that A.S. came to her apartment following the assault and she helped A.S. call the paramedics. She testified, "[A.S.] was all holding her face and [A.S.] said that she had gotten beaten up" by her ex-boyfriend. She further testified that "[A.S.] was bleeding a little bit" on the right side of her face and the blood was running down from somewhere around her right eye.[6]

¶7      A.S. went to the hospital that night for treatment and an examination. Pictures were taken that night, and again a few days later, of the injuries to her mouth, left side of her face, jaw, neck, and shoulder. A.S. also underwent an examination by a SANE nurse.[7]

¶8      The SANE nurse testified that, in addition to bruising and swelling to A.S.'s face and neck, she "notice[d] visible signs of abnormalities on [and] around her anus" in the form of redness and an abrasion measuring approximately five millimeters. As part of the exam, the nurse also questioned A.S. about whether she had any sexual activity within 120 hours of the assault. A.S. believed she answered yes when asked this question, but the medical reports and the nurse's testimony reflect that A.S. answered no. At trial A.S. testified that she had vaginal intercourse with a friend four or five days prior to the assault.

---

[5] This neighbor was someone other than Butch.

[6] During closing arguments, trial counsel highlighted that the neighbor's description of A.S.'s injuries was inconsistent with the other descriptions of A.S.'s injuries.

[7] As the nurse explained, "[a] sexual assault nurse examiner, commonly referred to as a SANE, is a registered nurse that has additional training in both the clinical treatment and education needed to take care of sexual assault victims and [those] who have been abused."

¶9    The DNA analyst testified about the testing done on the swabs taken during the SANE exam. First, and as particularly relevant here, the analyst testified that Peters' DNA was not found on the anal swab. Second, the analyst testified that testing on the swabs taken from underneath A.S.'s fingernails showed that Peters was the source of the DNA found under A.S.'s fingernails.

¶10    In relation to the testing done on the anal swab, the analyst described that she first tested the swab for the presence of semen and the test was positive. She then described that she isolated the sperm cells (the sperm fraction) and then tested to develop a DNA profile, and based on this DNA profile, she was able to exclude Peters as the contributor of the DNA found on the anal swab.[8] When asked where the DNA came from, she testified:

> There was no way to indicate if the DNA was found from touch DNA or semen specifically. It can be presumed that the DNA was received from the semen simply because semen was present, but it can't be definitively identified as that.

¶11    Based on the testimony and other evidence introduced at trial, during closing arguments, trial counsel argued that the allegations against Peters were not credible given the amount of inconsistencies in A.S.'s story and the lack of Peters' DNA on the anal swab. As an alternative explanation, trial counsel offered that A.S. had consensual anal sex with someone other than Peters, which lead to redness, an abrasion, and the presence of another man's semen in her anus.

_____

[8] The DNA report that was admitted into evidence during the analyst's testimony states that the anal swab was tested using an extraction technique that separates the cells into two fractions—non-sperm and sperm fractions. It further states that human DNA was isolated from the non-sperm and the sperm fractions and the DNA analysis was performed on the sperm fraction of the anal swab and excluded Peters as a source of the male DNA of the sperm fraction. The report further states that "[t]he non-sperm fraction from the anal swabs was not selected for further analysis."

¶12     The jury found Peters guilty of criminal trespass and second-degree sexual assault but not guilty of misdemeanor battery and strangulation and suffocation.  Peters was subsequently sentenced to a 100-day term of confinement at the House of Correction on his conviction for criminal trespass and a nine-year term of initial confinement and eight-year term of extended supervision on his conviction for second-degree sexual assault, to be served consecutive to each other.

¶13     Peters filed a postconviction motion asking the court to order DNA testing pursuant to WIS. STAT. § 974.07.  Specifically, Peters sought to have the court order DNA testing on the non-sperm fraction of the anal swab taken from A.S. during the SANE exam because this was a case of digital penetration—the allegations were of Peters' fingers penetrating A.S.'s anus, which would not result in the presence of semen.

¶14     The postconviction court denied the motion.  In denying the motion, the postconviction court "agree[d] with the analysis set forth by the State that the defendant has failed to establish under section 974.07(2), Stats., that the evidence is relevant or that further scientific testing of the evidence would yield a more probative result."  Thus, the court "incorporate[d] that portion of the State's response into its decision by reference."  The court then provided its own detailed reasoning why DNA testing on the non-sperm fraction of the swab would not have changed the outcome in this case or made the proceedings more favorable for Peters.

**DISCUSSION**

¶15     On appeal, Peters renews his argument for DNA testing pursuant to WIS. STAT. § 974.07 of the non-sperm fraction of the anal swab and argues that he

meets the criteria for both mandatory DNA testing and discretionary DNA testing. He argues that the results from the sperm fraction were "wholly irrelevant" because this was a case of digital penetration. We disagree.[9]

¶16  As relevant here, following a conviction for a crime, a defendant may move for DNA testing of evidence pursuant to WIS. STAT. § 974.07 if:

> (a) The evidence is relevant to the investigation or prosecution that resulted in the conviction[.]
>
> (b) The evidence is in the actual or constructive possession of a government agency.
>
> (c) The evidence has not previously been subjected to forensic [DNA] testing or, if the evidence has previously been tested, it may now be subjected to another test using a scientific technique that was not available or was not utilized at the time of the previous testing and that provides a reasonable likelihood of more accurate and probative results.

Sec. 974.07(2).

¶17  The applicable statute then separates the request for DNA testing into two categories:  mandatory DNA testing and discretionary DNA testing. Pursuant to WIS. STAT. § 974.07(7)(a), the court "shall" order DNA testing when:

> 1. The movant claims that he or she is innocent of the offense at issue in the motion under sub. (2).
>
> 2. It is reasonably probable that the movant would not have been prosecuted [or] convicted … for the offense at issue in the motion under sub. (2), if exculpatory [DNA] testing

---

[9] The parties dispute whether our standard of review is *de novo* or an erroneous exercise of discretion. *See* **State v. Denny**, 2017 WI 17, ¶¶74-75, 373 Wis. 2d 390, 891 N.W.2d 144 (recognizing the erroneous exercise of discretion standard applied in **State v. Hudson**, 2004 WI App 99, 273 Wis. 2d 707, 681 N.W.2d 316, yet declining to address the appropriate standard of review). We do not decide the applicable standard of review because our conclusion remains the same whether the standard of review is *de novo* or an erroneous exercise of discretion.

results had been available before the prosecution [or] conviction[.]

3. The evidence to be tested meets the conditions under sub. (2)(a) to (c).

4. The chain of custody of the evidence to be tested establishes that the evidence has not been tampered with, replaced, or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself can establish the integrity of the evidence.

¶18    Additionally, the court "may" order DNA testing under WIS. STAT. § 974.07(7)(b) if:

1. It is reasonably probable that the outcome of the proceedings that resulted in the conviction … for the offense at issue in the motion under sub. (2), or the terms of the sentence … would have been more favorable to the movant if the results of the [DNA] testing had been available before he or she was prosecuted, [or] convicted[.]

2. The evidence to be tested meets the conditions under sub. (2)(a) to (c).

3. The chain of custody of the evidence to be tested establishes that the evidence has not been tampered with, replaced, or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself can establish the integrity of the evidence.

¶19    While the parties address additional elements, the dispute focuses on whether it is reasonably probable that Peters would have been prosecuted or convicted or that the proceedings would have been more favorable. *See* WIS. STAT. § 974.07(7)(a)2.-3. (elements for mandatory testing); § 974.07(7)(b)1.-2. (elements for discretionary testing). We conclude that it is not reasonably probable that the requested DNA testing would have changed the outcome in

Peters' case or made the proceedings more favorable for him.[10]  Thus, Peters fails to satisfy the requirements for either mandatory or discretionary testing, and we need not address the remaining elements as this failure is fatal to his request.

¶20    The jury heard extensive testimony from A.S. describing how Peters entered her apartment without consent, the two fought, and Peters put his fingers in her anus while he had her pinned to the floor.  She described the pain she felt and how long that pain lasted.  The jury also heard testimony from the neighbor describing the condition A.S. was in that night, and testimony from the nurse with more details about the injuries she saw during the exam, including injuries to A.S.'s face as well as redness and an abrasion into her anus.

¶21    Peters focuses on the DNA analyst's testimony and the testing done on the anal swab that split the sample into sperm and non-sperm fractions.  He argues that "a prolonged digital assault involving friction sufficient to cause lasting redness, pain, and an actual injury" should have left behind touch DNA for testing on the non-sperm fraction, and a result excluding his DNA from the non-sperm fraction would tend to establish his innocence.

---

[10] We recognize that the standard used to determine "reasonably probable" as found in WIS. STAT. § 974.07(7)(a)2. and § 974.07(7)(b)1. is an undecided question.  *See Denny*, 373 Wis. 2d 390, ¶81 n.21.  "Reasonably probable" may be determined using the test applied in the context of newly discovered evidence by looking at the old and new evidence and asking whether the jury "would have a reasonable doubt as to the defendant's guilt."  *See State v. McCallum*, 208 Wis. 2d 463, 475, 561 N.W.2d 707 (1997).  It may also be determined using the test applied in the context of ineffective assistance of counsel wherein we ask whether there is "a probability sufficient to undermine the confidence in the outcome."  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Whether a reasonable probability is determined using the test applied in the context of newly discovered evidence or using the test applied in the context of a claim of ineffective assistance of counsel, the result would be the same in this case.

¶22 However, the DNA analyst specifically testified that Peters' DNA was not found on the anal swab. She also testified that "[t]here was no way to indicate if the DNA was found from touch DNA or semen specifically." Indeed, trial counsel specifically asked the analyst:

> Q: So the evidence—that evidence indicates that the source of the semen on the anal swabs was not Mr. Peters, but it was somebody else? Can you say that to a reasonable degree of scientific certainty?
>
> A: I can say the profile developed from the anal swabs was not consistent with Mr. Peters.

Trial counsel then explained these results to the jury during closing arguments as there was "no evidence down there implicating" Peters as the source of A.S.'s anal injury and pain.

¶23 Thus, it is not reasonably probable that Peters would not have been prosecuted or convicted, or that the outcome of the proceedings would have been more favorable, had DNA testing been conducted on the non-sperm fraction of the swab. *See State v. Denny*, 2017 WI 17, ¶77, 373 Wis. 2d 390, 891 N.W.2d 144. DNA testing on the non-sperm fraction showing that Peters' DNA was not present "would not be particularly compelling," *see id.*, ¶78, in light of the testimony from A.S., the neighbor, and the nurse, as well as the testimony from the DNA analyst who already testified before the jury that Peters' DNA was absent from the anal swab and that there is no way to determine what type of cell the DNA profile came from.

¶24 Furthermore, the jury was already presented with, and rejected, the defense theory that A.S. was not credible, that her injury was caused by consensual anal sex, and found Peters guilty in the absence of any DNA evidence that Peters contributed to the injury. *See id.*, ¶79 (acknowledging that "the jury

was aware of the possibility" of the evidence that the DNA testing could have provided). We see nothing more that DNA testing on the non-sperm fraction could have provided in this case.

## CONCLUSION

¶25 In sum, Peters is not entitled to DNA testing, either mandatory or discretionary, under WIS. STAT. § 974.07 because he fails to establish that it is reasonably probable that he would not have been prosecuted or convicted, or that the outcome of the proceedings would have been more favorable. Accordingly, Peters fails to meet the requirements of § 974.07(7) and, thus, we affirm the judgment and the order denying Peters' postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.