COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1598-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF2257

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NIGEL J. SMITH,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: CYNTHIA MAE DAVIS and JEFFREY A. WAGNER, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nigel J. Smith appeals from a judgment convicting him of leaving or storing a loaded firearm near a child and possessing a firearm as a felon, both as a party to a crime and as a repeater, and an order denying his postconviction motion without a hearing.[1] On appeal, Smith contends that he is entitled to an evidentiary hearing based on newly-discovered evidence. In addition, Smith contends that his trial attorney was ineffective for failing to impeach and properly cross-examine one of the State's witnesses. As discussed below, we reject Smith's arguments and conclude that the circuit court properly denied Smith's motion without an evidentiary hearing. We therefore affirm.

## BACKGROUND

¶2 On September 30, 2016, Smith's nephew, four-year old S.S., shot himself in the head. Nigeria Smith, S.S.'s mother and Smith's twin sister, found S.S. on the floor of Smith's bedroom. On a chair near S.S.'s body was a silver revolver. Nigeria's friend, Elaysha Jackson, told police that approximately a month prior, she had seen the gun in the bedroom where S.S. was found.

¶3 On the same date of S.S.'s death, police brought Nigeria in for questioning. At first Nigeria told police that she had never seen the firearm before and she did not allow firearms in her home. She then told the police that the last time she saw a firearm in the home was in May of that year. That firearm was black and did not belong to Smith. Later, Nigeria told police that Smith was trying to get a gun, or that he possibly had a gun since his release from jail. She

---

[1] The Honorable Cynthia Mae Davis presided over Smith's jury trial. The Honorable Jeffrey A. Wagner decided Smith's postconviction motion. We refer to Judge Davis as the trial court and Judge Wagner as the circuit court.

said that Smith kept a gun underneath his bed, but she did not know if it was loaded. She said that she had last seen the gun two months ago and thought it might be the same gun S.S. found. The interview was then stopped.

¶4      Nigeria was placed in an interview room and read her *Miranda* rights.[2] Nigeria told police that Smith had a firearm when he was released from jail and that it was the same firearm that S.S. had found. Nigeria also said she heard Smith on the phone trying to obtain some bullets because he was going to a party and needed the bullets for protection.

¶5      Smith was charged in Milwaukee County Circuit Court Case No. 2017CF2257 with leaving a loaded firearm near a child and possessing a firearm as a felon, both as a repeater. An amended information added the party to a crime modifier to both counts. Smith was later charged in a separate case, Milwaukee County Circuit Court Case No. 2017CF4561, with two counts of felony intimidation of a witness based on calls he made from jail in an attempt to dissuade Nigeria and Jackson from coming to court. The trial court granted the State's motion to join the two cases for trial.

¶6      At trial, the State called multiple witnesses, including Nigeria, Jackson, Detective Michael Washington, DNA analyst Pamela Taylor, and Detective Jeremiah Jacks.

¶7      Nigeria testified that she discovered S.S.'s body in the bedroom Smith slept in. According to Nigeria, their brother, Trelonnie Smith, also slept in that bedroom sometimes, but did not keep his belongings in that room. Nigeria

---

[2] *See* ***Miranda v. Arizona***, 384 U.S. 436 (1966).

testified that she had seen the same silver and brown firearm she saw near S.S.'s body one time before in Smith's hand at a "get together." Nigeria further testified that she heard Smith having a conversation on the phone asking someone where he could get bullets, but she did not recall when that conversation took place.

¶8    In addition, Nigeria testified that after the shooting, Smith lived in Chicago, and then Iowa until his arrest. After Smith's arrest, he called her from the jail and asked her if she was coming to court. Smith stated during the call that if Nigeria and Jackson did not come to court, he would beat the case. Nigeria then volunteered to call Jackson to see if she was coming to court. Nigeria testified that Smith wanted her and Jackson to help him by not coming to court to make sure he could come home. However, Smith did not directly ask her not to show up. Nigeria admitted that she did not show up for the original trial date.[3]

¶9    Jackson testified that a month before S.S.'s death, she saw a silver gun in the bedroom where S.S. died. She stated that the gun had been in a drawer and "wasn't concealed," although she acknowledged that she may have originally told police that the gun was in a shoebox under the bed. Jackson denied telling the police that she confronted Smith directly about the gun and that Smith had made a comment about the gun having no bullets in it.

¶10    Detective Michael Washington testified that in the bedroom in which S.S. was discovered, police found Smith's library card, his Department of Corrections identification card, his medical card, and a driver license's application. Washington also testified that the residence did not have a gun safe or

---

[3] Jackson also did not show up for the original trial date either.

a trigger lock to keep a firearm secure, and it appeared that the firearm was already loaded when S.S. found it because a four-year-old would not be capable of fully loading the gun.

¶11 DNA analyst Pamela Taylor testified that swabs from the gun contained a mixture of two people's DNA. Smith was excluded as a major contributor. Taylor, however, testified that she was not able to determine if Smith was a minor contributor because the minor contributor DNA was insufficient to make comparisons.

¶12 In addition, Detective Jeremiah Jacks testified that the DNA profile recovered from the trigger guard swab of the gun was entered in a database run by the FBI and registered a hit to Trelonnie. Nonetheless, Detective Jacks testified that it was common for family members to share guns, and it did not change the course of the investigation.

¶13 Smith stipulated that he had previously been convicted of a felony. Smith testified that he lived with Nigeria and slept there about three nights per week. The other nights, Smith stayed at his girlfriend's house. Smith testified that he left things at Nigeria's house because it was his official address with the Department of Corrections and he needed to leave his belongings there in case his probation officer did a home visit. Smith denied that the gun that killed S.S. was his gun and denied knowing about the gun. Smith also explained that he left Wisconsin after S.S.'s death because he was depressed and he mentally shut down, not to avoid prosecution.

¶14 The jury found Smith guilty of all charges. Smith filed a postconviction motion arguing that he was entitled to a new trial based on newly-discovered evidence—a recantation from Nigeria. According to the motion,

almost two years after Smith's sentencing, Nigeria spoke to an investigator employed by the Office of the State Public Defender. She said that she was not interviewed by trial counsel prior to the trial, but she remembered talking to Milwaukee detectives and telling them that she saw Smith with the gun before S.S.'s death and that the firearm was probably Smith's. Nigeria said she made this statement to the detectives because they kept telling her that they knew the gun belonged to Smith. They told her that if she did not tell them it was his gun she was going to be in trouble for her son's death and she feared that her daughter would be taken away. Nigeria further stated that she lied to investigators when she told them she had seen Smith with that specific gun; although she had seen Smith with a gun in the past, it was not the gun she found next to her son's body. Nigeria also stated that she had not testified truthfully at trial.

¶15 In addition, the postconviction motion argued that Smith's trial counsel was ineffective for failing to impeach and properly cross-examine Nigeria regarding statements she made to the police in which she denied knowing about the gun and the fact that she had been arrested and faced the threat of prosecution.[4]

¶16 The circuit court denied the motion without an evidentiary hearing. The court assumed, without deciding, that Smith satisfied the first four prongs of the newly-discovered evidence test, but held that the alleged recantation did not create a reasonable probability of a different result. *See State v. Armstrong*, 2005 WI 119, ¶161, 283 Wis. 2d 639, 700 N.W.2d 98. The court stated that Nigeria's

---

[4] Smith also contended that trial counsel was ineffective for failing to object to a misstatement of the law during the State's closing argument. Smith does not raise this issue on appeal. Accordingly, we deem it abandoned and do not address is further. *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

6

recantation "does not recant that much." Additionally, other evidence supported Smith's guilt including Jackson's statements, evidence that Smith had left Wisconsin shortly after the incident, and the recorded calls Smith made while in custody. In regards to Smith's ineffective assistance claim, the circuit court did not address the deficient performance prong, but concluded that Smith could not show prejudice.

¶17 This appeal follows.[5] Additional relevant facts will be referenced below.

## DISCUSSION

¶18 On appeal, Smith contends that he is entitled to an evidentiary hearing on his newly-discovered evidence claim and his ineffective assistance of counsel claim.

¶19 When a postconviction motion is denied without an evidentiary hearing, we review *de novo* "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and "whether the record conclusively demonstrates that the defendant is not entitled to relief." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to

---

[5] We note that this appeal only addresses Milwaukee County Circuit Court Case No. 2017CF2257. A notice of appeal was also filed in Milwaukee County Circuit Court Case No. 2017CF4561, and was consolidated with this appeal, but then was voluntarily dismissed. *See State v. Nigel J. Smith*, No. 2021AP1599 (Nov. 16, 2021).

grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶20    Below, we first address whether Smith is entitled to an evidentiary hearing on his newly-discovered evidence claim. We then turn to Smith's ineffective assistance of counsel claim.

## I.    Newly-Discovered Evidence

¶21    To prevail on a newly-discovered evidence claim, a defendant must show by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. Love*, 2005 WI 116, ¶43, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted). If a defendant satisfies his burden on all four of these elements, the circuit court must then determine "whether a reasonable probability exists that a different result would be reached in a trial." *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted). "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶22    When the newly-discovered evidence is a witness's recantation, such as in this case, the recantation "must be corroborated by other newly discovered evidence." *State v. Ferguson*, 2014 WI App 48, ¶25, 354 Wis. 2d 253, 847 N.W.2d 900 (emphasis and citation omitted). Corroboration exists when "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.* (citation omitted).

¶23    Here, the record conclusively demonstrates that Smith is not entitled to relief. *See* ***Allen***, 274 Wis. 2d 568, ¶9. Nigeria's recantation is not corroborated by other newly-discovered evidence of a feasible motive for the initial false statement. *See* ***Ferguson***, 354 Wis. 2d 253, ¶25.

¶24    In his postconviction motion, Smith contended that Nigeria's motive for lying was to avoid being blamed for S.S.'s death and losing custody of her other child. Smith also noted that Nigeria was interviewed for an extended period of time, during which she was subject to a blood draw which would have revealed that "she had a substantial amount of delta-9-THC in her system[.]"

¶25    In support of his argument Smith points to ***State v. McCallum***, 208 Wis. 2d 463, 561 N.W.2d 707 (1997). In response, the State contends that this case is much more akin to ***State v. McAlister***, 2018 WI 34, 380 Wis. 2d 684, 911 N.W.2d 77. We agree with the State.

¶26    In ***McCallum***, McCallum moved to withdraw his plea to second-degree sexual assault after the victim recanted. ***Id.***, 208 Wis. 2d at 468. The victim, who was the daughter of McCallum's girlfriend, explained that she made up the assault so that she could get McCallum out of her mother's life in hopes that her mother and father would reconcile. ***Id.*** at 469-71. In addition, the victim resented the fact that McCallum had taken the place of her father and had disciplined her. ***Id.*** at 478. Our supreme court held that these motives satisfied the newly-discovered evidence requirement "inasmuch as the motives for [the victim's] initial accusation were unknown until she revealed them when she recanted." ***Id.***

¶27    In ***McAlister***, two of McAlister's co-defendants recanted their statements against him. ***Id.***, 380 Wis. 2d 684, ¶¶1-2, 21-23. McAlister argued that

their motive was to obtain favorable plea deals that would reduce their prison time. *See id.*, ¶¶4, 59. Our supreme court held that the evidence was not a newly-discovered motive because the potential motive was known at the time of the trial. *Id.*, ¶59.

¶28 Here, as in *McAlister*, Nigeria's alleged motives were known at the time of the trial. The defense knew that Nigeria had been arrested and the police initially considered her a suspect. The defense also knew that Nigeria told police she had smoked half of a blunt prior to S.S.'s death, and agreed to have her blood drawn. In addition, trial counsel specifically argued in closing that Nigeria was motivated to blame Smith because she did not want to be blamed for S.S.'s death and she was afraid of losing her other child. Trial counsel stated:

> [the State] raised a point, why might Nigeria had made up this story. I think Nigel Smith answered that question when he was on the stand. This is a woman that lost her child, she's hysterical, what she must have gone through was horrible. Horrible. I can't even imagine, and that's real. But what I do know is that she was afraid she was going to be held negligent. Were they going to take her other child from her? I don't know. And I don't want to face that, but it is a possible motive. [The State] said there was no motive, but it's a possible motive.

Thus, Nigeria's motives for blaming Smith were known prior to trial and do not constitute newly-discovered evidence.[6] *See Ferguson*, 354 Wis. 2d 253, ¶25.

---

[6] We note that the State also argues that Nigeria's recantation was not corroborated by other newly-discovered evidence showing circumstantial guarantees of trustworthiness, and her recantation does not create a reasonable probability of a different result. Given that we conclude that Nigeria's motives were known prior to trial and do not constitute newly-discovered evidence, we do not address the State's other arguments. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶29     Therefore, the record conclusively shows that Smith is not entitled to relief based on newly-discovered evidence, and the circuit court properly denied Smith's claim without an evidentiary hearing.  *See Allen*, 274 Wis. 2d 568, ¶9.

## II.     Ineffective Assistance of Counsel

¶30     When evaluating an ineffective assistance of counsel claim, we apply the well-established test in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show both that counsel performed deficiently, and that the deficiency was prejudicial.  *Id.* at 687.   To prove deficient performance, the defendant must show that specific acts or omissions of counsel "were outside the wide range of professionally competent assistance."  *See id.* at 690.  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If a defendant fails to make an adequate showing as to one prong of the test, we need not address the other.  *Id.* at 697.

¶31     In his postconviction motion, Smith contended that trial counsel performed deficiently when she failed to impeach Nigeria using her prior statements denying that she had previously seen the gun.  Smith also asserted that trial counsel should have asked Nigeria about her arrest and the fact that she faced the threat of prosecution.

¶32     The State responds that the majority of the information that Smith claims should have been introduced was, in fact, introduced at trial.  According to the State, the fact that trial counsel did not cross-examine Nigeria as thoroughly as he would have liked comes nowhere near the level of an error "so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687. We agree with the State.

¶33 To start, during direct examination, Nigeria admitted that she initially told police that she had not seen the gun that S.S. used to shoot himself before. Subsequently, during cross-examination, trial counsel also asked Nigeria about her initial denial: The exchange was as follows:

> Trial counsel: Okay. From what I understand, when you first talked to police, you had said—on September 30th— you had said that you had never seen that gun before, correct?
>
> Nigeria: Correct.

In addition, Detective Shelondia Tarver testified that Nigeria initially told police that she had never seen the gun before.

¶34 The jury also knew that Nigeria had been arrested in this case. Detective Tarver testified that the police first did a voluntary interview with Nigeria. During the voluntary interview, Nigeria was arrested, and the police then conducted a *Mirandized* interview of her. The State also played a portion of Nigeria's custodial interview. In addition, Nigeria admitted that she was brought to the Milwaukee County District Attorney's Office for a charging conference. Based on this evidence, as stated above, trial counsel argued in closing that Nigeria was motivated to blame Smith because she was afraid of being blamed for S.S.'s death and she did not want her other child taken from her.

¶35 Therefore, we conclude that the record conclusively shows that Smith cannot prove deficient performance. Accordingly, the circuit court properly denied Smith's ineffective assistance of counsel claim without an evidentiary hearing. *See Jackson*, 405 Wis. 2d 458, ¶8.

**CONCLUSION**

¶36 In sum, we reject Smith's arguments that he is entitled to an evidentiary hearing based on newly-discovered evidence or ineffective assistance of counsel. Therefore, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.