COURT OF APPEALS
DECISION
DATED AND FILED

September 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP1454**

STATE OF WISCONSIN

Cir. Ct. No. 2000CF1025

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

        PLAINTIFF-RESPONDENT,

    V.

RODOLPH J. LANAGHAN,

        DEFENDANT-APPELLANT.

        APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

        Before White, C.J., Colón, P.J., and Donald, J.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Rodolph J. Lanaghan appeals from a circuit court order denying his motion for reconsideration.[1]  On appeal, Lanaghan contends that he is entitled to plea withdrawal, a new sentencing hearing, and sentence modification based on newly-discovered evidence relating to a shooting that took place over twenty-five years ago.  We conclude that the circuit court properly denied Lanaghan relief, and we affirm.

## BACKGROUND

¶2    Lanaghan was charged with one count of first-degree intentional homicide while using a dangerous weapon as a party to a crime.  Lanaghan ultimately entered a guilty plea to an amended charge of first-degree reckless homicide while using a dangerous weapon.  The criminal complaint was used as a factual basis for Lanaghan's plea.

¶3    According to the criminal complaint, on February 25, 2000, Lanaghan and a group of people, including Jeffrey Groth, went to a bar in the City of Milwaukee.  One week prior, Groth was physically assaulted at the bar.  Lanaghan's group knew that it was likely that the person who had assaulted Groth would be at the bar again that night.  Prior to closing time, Lanaghan and the others in his group left the bar.  Outside, Lanaghan fired a gun multiple times towards Daniel Oswald, a member of a different group.  One of the bullets struck and killed an innocent bystander, Joseph George.

---

[1] The Honorable Michael J. Barron presided over the plea hearing and the two sentencing hearings in this case.  The Honorable Ellen R. Brostrom presided over the newly-discovered evidence litigation relevant to this appeal.  We refer to Judge Barron as the trial court and Judge Brostrom as the circuit court.

¶4 Lanaghan was arrested and told police that he was receiving angry looks from a group of men at the bar. After Lanaghan left the bar, he looked back and noticed that two of the men also came outside. Lanaghan saw the look that they had on their faces and he removed a revolver from the front pocket of his coat and began firing shots. Lanaghan thought "he had to do something to let them know that they can't fuck with us." Lanaghan also said that it was "a thing of rage" and that he was "pissed off" from the looks they gave him.[2]

¶5 On September 5, 2000, Lanaghan was sentenced to thirty-two years of initial confinement and ten years of extended supervision. At sentencing, Lanaghan thanked the victim's family for agreeing to let him enter a plea to a reduced charge, expressed his remorse, and asked for forgiveness.

¶6 Following sentencing, Lanaghan filed a postconviction motion requesting a new sentencing hearing or, in the alternative, an order modifying the length of his confinement. Lanaghan asserted multiple claims, including that he had insufficient time to read his presentence investigation report. The trial court granted Lanaghan's request for a new sentencing hearing based on the failure of the court to inquire whether or not he had the opportunity to read the presentence report and if he wanted to offer any additions or corrections.

¶7 A second sentencing hearing took place on July 19, 2001, and the trial court imposed the same sentence. Relevant to this appeal, during the sentencing hearing, Lanaghan provided a lengthy allocution. Notably, Lanaghan

---

[2] Later, Lanaghan asserted that when he spoke to the police, he was "very tired, hungry, hungover … just sick of them yelling at me, so I just told them what they wanted to hear—that I fired the gun and I just pretty much made up a story to go along with what they were telling me."

asserted that when he was outside the bar, he saw Oswald and another man leave and that "they both reached under the[ir] shirt[s] and … that's when I pulled the gun out and I fired." He alleged that the only reason he fired the gun was to protect himself and his friends.

¶8 Subsequently, Lanaghan's counsel filed a no-merit appeal, which this court affirmed. *State v. Lanaghan*, No. 2002AP1408-CRNM, unpublished op. and order (WI App Jan. 17, 2003).

¶9 In 2022, Lanaghan filed a motion seeking plea withdrawal, a new sentencing hearing, or sentence modification, based on newly-discovered evidence. In support, Lanaghan filed two affidavits from Oswald, in which Oswald admitted that he had a gun in his pocket, and as he left the bar, he placed his hand on his waistband intending to signal that he had a gun.[3]

¶10 After briefing, the circuit court issued a written order denying Lanaghan's motion. The court found that Lanaghan did not meet his burden to establish newly-discovered evidence. Lanaghan then filed a motion for reconsideration, and after additional briefing, the court ordered an evidentiary hearing.

¶11 Lanaghan and Oswald both testified at the evidentiary hearing. Lanaghan testified that he saw two men reach for their waistbands and believed they were about to shoot. Lanaghan "panicked," pulled out the gun from his

---

[3] One of the affidavits was an informal signed statement from Daniel Oswald. The other affidavit was a signed and notarized statement of Oswald prepared by Lanaghan's counsel. Oswald admitted in both statements that he had a gun and placed his hand on his waistband intending to signal that he had a gun.

pocket, and fired. Lanaghan testified that he did not fire "straight in the air, but not directly at them either" to protect himself and his friends. Lanaghan, however, admitted that he did not see either man pull out an actual gun. Lanaghan testified that had he known Oswald's testimony would be supportive of a self-defense claim, he would not have entered into the plea agreement and would have instead gone to trial.

¶12     Oswald testified that he was at the bar to settle a dispute from the week before, that he had a gun,[4] and others in his group also had guns. Oswald testified that while he was walking outside, he put his hand in his pocket and that is when the shooting began. Oswald testified, "I didn't think … having my hand in my pocket as I walk out of a bar, there was anything wrong with—wrong with it[.]" Oswald denied ever pulling the gun out of his pocket.

¶13     Following the hearing, the circuit court issued a written decision denying Lanaghan's request for plea withdrawal and sentencing relief. The court found that the evidence Lanaghan presented was discovered after his conviction and Lanaghan was "not negligent in failing to discover it"; however, Lanaghan failed to meet his burden to show the evidence was "material" and "not cumulative." In addition, the court found that the new evidence would not likely have made a difference at trial.

¶14     In regards to Lanaghan's inaccurate information claim, the circuit court found that there was no evidence in the record that the trial court considered or gave any attention at sentencing to "whether or not Oswald was armed."

---

[4] At one point, Oswald testified that "my cousin tells me now [that the gun I had] was a BB gun."

Rather, the circuit court found that the trial court made a credibility determination that "suggested that [Lanaghan] acted maliciously, rather than in self-defense" and "[w]hether Oswald had a gun—which was never displayed and which [Lanaghan] never saw" was unlikely to have altered this credibility determination.

¶15 Finally, the circuit court denied Lanaghan's request for a sentence modification, finding that the new evidence was "not highly relevant to the imposition of sentence." The court reiterated that "whether Oswald had a gun— which was never displayed and which [Lanaghan] never saw—is unlikely to have altered [the trial court's] credibility determination." The court further stated that Lanaghan "acted in a highly reckless manner, shooting four or five rounds— indeed, emptying his clip—in a parking lot with multiple other people around, in the face of a threat that he only suspected. In doing so, he [] took the life of an innocent man."

¶16 Lanaghan now appeals from the order denying the motion for reconsideration.

## DISCUSSION

¶17 On appeal, Lanaghan renews his arguments that he should be permitted to withdraw his plea, he is entitled to a new sentencing hearing, and grounds exist for a sentence modification. We address each of Lanaghan's claims below.

### I. Plea Withdrawal

¶18 After sentencing, a defendant who seeks to withdraw his or her guilty plea carries "the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest injustice."

6

*State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997); *modified on other grounds*, **State v. Kivioja**, 225 Wis. 2d 271, 293-96, 592 N.W.2d 220 (1999). Plea withdrawal under the manifest injustice standard "rests in the circuit court's discretion." *McCallum*, 208 Wis. 2d at 473.

¶19     For newly-discovered evidence to constitute a manifest injustice, several criteria must be met. The defendant must establish by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *Id.* If the defendant satisfies his or her burden on all four of these elements, the circuit court must then determine "whether a reasonable probability exists that a different result would be reached in a trial." *Id.* In addition, if the newly-discovered evidence is a witness's recantation, the recantation must be corroborated by other newly-discovered evidence. *Id.* at 473-74.

¶20     Lanaghan contends that Oswald's statements satisfy all of the newly-discovered evidence criteria. We disagree. As the circuit court found, Lanaghan has failed to meet his burden to establish that the evidence is material to an issue in the case. *See id.* at 473.

¶21     Lanaghan asserts that Oswald's affidavits and testimony are relevant to the question of self-defense under WIS. STAT. § 939.48(1) (2023-24).[5]

---

[5] Although the underlying offense in this case was committed in 2000, we note that the relevant statutory language has not changed. Thus, all references to the Wisconsin Statutes are to the 2023-24 version.

Lanaghan cites to WIS JI—CRIMINAL 805, which states that a defendant may intentionally use force against another only if:

> the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and
>
> the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and
>
> the defendant's beliefs were reasonable.

*Id.* (footnote omitted). The instruction further states that "[t]he defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that the force used was necessary to prevent imminent death or great bodily harm to (himself) (herself)." *Id.* When determining whether a defendant's beliefs were reasonable, at issue is what the defendant believed "*at the time of the defendant's acts.*" *Id.* (emphasis added).[6]

¶22 Here, at the time of the shooting, Lanaghan believed that Oswald had a gun. Whether Oswald actually had a gun or not is irrelevant. As the circuit court explained,

> [Lanaghan's] contemporaneous viewpoint does not change whether he learned Oswald had a gun prior to his plea, or eighteen years later. The standard is what he knew and believed at the time he fired the gun. He already believed Oswald had a gun. Whether [Oswald] actually did has no effect on the defendant's beliefs at the time of the events in question.

---

[6] Lanaghan's brief-in-chief also notes in passing WIS. STAT. § 939.48(3) & (4), which address the unintended infliction of harm upon a third party and the privilege to defend a third party. The related self-defense jury instructions for these subsections also provide that the reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of the defendant's acts. *See* WIS JI—CRIMINAL 821 & 830.

¶23  Therefore, as the circuit court found, Oswald's affidavits and testimony are not material and do not constitute newly-discovered evidence. Accordingly, we reject Lanaghan's argument that he is entitled to plea withdrawal.[7]

## II.  New Sentencing Hearing

¶24  Lanaghan next contends that he is entitled to a new sentencing hearing because Oswald's affidavits and testimony establish that the trial court "relied upon an inaccurate portrayal of the facts and circumstances surrounding the shooting" at sentencing.

¶25  "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  To prevail on an inaccurate information claim, a defendant must show that: (1) the information was inaccurate; and (2) the circuit court actually relied on the inaccurate information at sentencing.  *State v. Travis*, 2013 WI 38, ¶21, 347 Wis. 2d 142, 832 N.W.2d 491.  If the defendant makes this showing, the burden shifts to the State to prove that the error was harmless.  *Id.*, ¶23.  "Whether a defendant has been denied this due process right is a constitutional issue that an appellate court reviews de novo."  *Tiepelman*, 291 Wis. 2d 179, ¶9.

---

[7] The circuit court additionally addressed whether a reasonable probability exists that a different result would be reached in a trial.  Because we conclude that the evidence was not material, we do not reach this issue.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶26    Here, Lanaghan has failed to prove that inaccurate information was presented or relied upon by the trial court. The trial court did not take into consideration at either of the sentencing hearings what Oswald did or did not do before Lanaghan fired his gun. As the circuit court observed, the issue of whether Oswald was armed "was not discussed" and "no one made any representation about that fact one way or the other." Thus, we reject Lanaghan's inaccurate information argument.

### III.    Sentence Modification

¶27    Lastly, Lanaghan argues that Oswald's affidavits and testimony provide grounds for sentence modification.

¶28    A circuit court may modify a sentence based on a defendant's showing of a "new factor." *State v. Hegwood*, 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983). A new factor is:

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). The defendant bears the burden of establishing the existence of a new factor by clear and convincing evidence. *Id.*, ¶36. Whether a fact or set of facts constitutes a new factor is a question of law that we review independently. *State v. Grindemann*, 2002 WI App 106, ¶22, 255 Wis. 2d 632, 648 N.W.2d 507.

¶29    Here, Lanaghan has failed to prove that Oswald's postconviction testimony is "highly relevant." *See Harbor*, 333 Wis. 2d 53, ¶40. As stated above, the trial court did not take into account at either of the sentencing hearings what

Oswald did or did not do before Lanaghan fired his gun. Rather, the court took into account that Lanaghan armed himself with a loaded gun at the bar and could have simply left without pulling out a gun. Thus, we are not persuaded that Oswald's testimony is highly relevant to the imposition of his sentence.

## CONCLUSION

¶30 Therefore, for all of the reasons above, we reject Lanaghan's arguments, and affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.